IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FUZHOU HENGLI PAPER CO., LTD, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 25-00064 |

## COMPLAINT

1.  Plaintiff Fuzhou Hengli Paper Co., Ltd ("Fuzhou Hengli" or "Plaintiff") by and through its counsel hereby alleges and states as follows:

## JURISDICTION

2.  Fuzhou Hengli brings this action pursuant to Sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of the Tariff Act of 1930, *as amended* ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i) to contest certain aspects of the final determination in the antidumping duty investigation of certain paper plates from China, Case No. A-570-164, issued by the International Trade Administration of the U.S. Department of Commerce ("Commerce"). *See Certain Paper Plates from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 8,271 (Dep't Commerce Jan. 28, 2025) ("*Final Determination*"), and accompanying Issues & Decision Memorandum ("IDM"); *Certain Paper Plates from the People's Republic of China, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 13,139 (Dep't Commerce Mar. 20, 2025) (the "Order").

1

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

## PARTIES AND STANDING

4. Plaintiff Fuzhou Hengli is a Chinese exporter of paper plates from China. Plaintiff participated in the antidumping investigation before Commerce and is an interested party under 19 U.S.C. § 1677(9)(a). Plaintiff has standing to commence this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(a)(2)(A)(i)(II).

5. Defendant is the United States of America, acting by and through the U.S. Department of Commerce.

## TIMELINESS OF THE ACTION

6. Commerce published the Order in the Federal Register on March 20, 2025. Plaintiff filed a summons initiating this appeal on April 7, 2025, which was within 30 days of the publication of the Order. This action was therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II). This complaint is being filed on April 7, 2025, which is within 30 days of the filing of the summons and is thus timely filed under Court of International Trade Rule 3(a)(2).

## STATEMENT OF FACTS

7. On January 25, 2024, AJM Packaging Corporation ("AJM"), Aspen Products, Inc. ("Aspen"), Dart Container Corporation ("Dart"), Hoffmaster Group, Inc. ("Hoffmaster"), Huhtamaki Americas, Inc. ("Huhtamaki"), and Unique Industries, Inc. ("Unique") (collectively known as the American Paper Plate Coalition or "Petitioner") filed a petition (the "Petition") with Commerce alleging that imports of paper plates from the People's Republic of China (as well as Thailand and Vietnam) were being, or were likely to be, sold in the United States at less

than fair value.

8.     On February 26, 2024, Commerce issued a notice of the initiation of a less-than-fair-value investigation with a period of investigation ("POI") for China, a non-market economy ("NME") country, of July 1, 2023 through December 31, 2023.  *See Certain Paper Plates From the People's Republic of China, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 14,046 (Dep't Commerce Feb. 26, 2024).

9.     On April 22, 2024, Commerce selected Fuzhou Hengli and Jinhua P&P Product Co., Ltd. ("Jinhua") as the mandatory respondents in this investigation. *See* Mem. to James Maeder, Deputy Assistant Sec'y for Antidumping and Countervailing Duty Operations, from Toni Page, International Trade Compliance Analyst, Office VII, Antidumping and Countervailing Duty Operations, and Tylar Lewis, International Trade Compliance Analyst, Office VII, Antidumping and Countervailing Duty Operations, "Less-Than-Fair-Value Investigation of Certain Paper Plates from the People's Republic of China: Respondent Selection" (Apr. 22, 2024) (on record of Case No. A-570-164).

10.    Commerce issued initial questionnaires to Fuzhou Hengli on April 24, 2024.  *See* Letter from Lana Nigro, Program Manager, AD/CVD Operations, Office VII, to Donald B. Cameron, Morris, Manning & Martin, LLP, "Re: Less-Than-Fair-Value Investigation of Certain Paper Plates from China: Request for Information" (Apr. 24, 2024) (on record of Case No. A-570-164).  Fuzhou Hengli subsequently filed its responses to Commerce's initial questionnaire. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Re: Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Section A Initial Questionnaire Response" (May 29, 2024) ("Hengli Sec. A Resp."); Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Re: Certain Paper Plates from the People's Republic of

3

China, Case No. A-570-164: Fuzhou Hengli's Section s C and D Initial Questionnaire Responses" (June 18, 2024) ("Hengli Sec. C-D Resp.").

11. In proceedings involving NME countries, Section 773(c) of the Act requires Commerce to use surrogate values of factors of production and other selling costs from a comparable market economy country. *See* 19 U.S.C. § 1677b(c). Accordingly, Commerce also requested surrogate country and surrogate value comments and information from all interested parties on April 30, 2024. *See* Letter from Lana Nigro, Program Manager, AD/CVD Operations, Office VII, to All Interested Parties, "Re: Less-Than-Fair-Value Investigation of Certain Paper Plates from China: Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information" (Apr. 30, 2024) ("Request for SC and SV Information") (on record of Case No. A-570-164).

12. Fuzhou Hengli submitted surrogate country comments on May 14, 2024. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Re: Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli Surrogate Country Comments" (May 14, 2024) ("SC Comments"). Petitioners also submitted surrogate country comments. *See* Letter to Sec'y Commerce from The Bristol Group PLLC, "Re: *Certain Paper Plates from the People's Republic of China*: Comments on Surrogate Country" (May 14, 2024). Fuzhou Hengli, Jinhua, and Petitioner submitted surrogate value comments on June 28, 2024. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Re: Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Surrogate Value Comments" (June 28, 2024); Letter to Sec'y Commerce from deKieffer & Horgan, PLLC, "Re: *Certain Paper Plates from the People's Republic of China*: Preliminary Surrogate Value Submission" (June 28, 2024); Letter to Sec'y Commerce from The Bristol Group PLLC, "Re:

4

*Certain Paper Plates from the People's Republic of China*: Petitioner's Initial Surrogate Value Submission" (June 28, 2024).

13.     Petitioner made a supplemental surrogate value submission on July 23, 2024.  *See* Letter to Sec'y Commerce from The Bristol Group PLLC, "Re: *Certain Paper Plates from the People's Republic of China*: Petitioner's Supplemental Surrogate Value Submission" (July 23, 2024).  Fuzhou Hengli and Jinhua also submitted final surrogate value comments on July 23, 2024.  *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Re: Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Final Surrogate Value Submission" (July 23, 2024) ("Final SV Submission"); Letter to Sec'y Commerce from deKieffer & Horgan, PLLC, "Re: *Certain Paper Plates from the People's Republic of China*: Final Surrogate Value Submission" (July 23, 2024).

14.     In its surrogate country comments, Fuzhou Hengli submitted economic information relating to Romania, Chile, Bulgaria, Costa Rica, Malaysia, and Turkey, the countries that were on Commerce's list of countries with the closest per capita GNI to China, as provided in its Request for SC and SV Information.  *See* SC Comments at Att. 1.  Pursuant to the Act, Commerce selects surrogate values from market economy countries that are "(A) at a level of economic development comparable to that of the non-market economy country, and (B) significant producers of comparable merchandise."  *See* 19 U.S.C. § 1677b(c)(4).  Based on the information it submitted, Fuzhou Hengli argued that Turkey provided the most comparable data because it is a significant producer of the subject merchandise in this investigation and had significant exports during the POI.  *See* SC Comments.

15.     In its final surrogate value comments, Fuzhou Hengli submitted the 2023 financial statements of Barem Ambalaj Sanayi ve Ticaret Anonim Şirketi ("Barem"), a producer of

5

comparable merchandise in Turkey, as well as a calculation of surrogate financial ratios based on Barem's financial statements. *See* Final SV Submission at Ex. 10 & 11. Furthermore, Fuzhou Hengli explained that it used a different paper input than Jinhua, and provided extensive documentation, including academic articles, comparing the different types of paper inputs and the product standards to which the different inputs were designed. *See id.* at Ex. 18, 29 & 20. Based on this documentation, Fuzhou Hengli demonstrated that its paper input was folding box board ("FBB") rather than kraft paperboard.

16.  To determine whether a respondent's goods are sold in the United States at less than fair value, Commerce compares the price at which the respondent's goods are sold in the United States and in the respondent's home market (referred to as "normal value"). In the case of exports from a NME country, Commerce calculates normal value based on the respondent's reported factors of production ("FOPs") in accordance with Section 773(c) of the Act. 19 U.S.C. § 1677b(c). Commerce makes this comparison on the basis of individual sales, so that a respondent's costs are allocated across each product sold, which is given a unique control number ("CONNUM") in the respondent's database submitted to Commerce. Therefore, in Section D of its questionnaire, Commerce requested that Fuzhou Hengli "provide a detailed explanation of how you derived your estimated FOP consumption for merchandise under investigation on a CONNUM-specific basis and explain why the methodology you selected is the best way to accurately demonstrate an accurate consumption amount." *See* Hengli Sec. C-D Resp. at D-3.

17.  In its questionnaire responses, Fuzhou Hengli explained that it is a trading company and that the merchandise under consideration was produced by unaffiliated producers Guangdong Ecosource Environmental Technology Co., Ltd. ("Ecosource") and Ningbo Hongtai

Package New Material Technology Co., Ltd. ("Ningbo Hongtai"). *See* Hengli Sec. A Resp. at 23; Hengli Sec. C-D Resp. at D-1–D-2. Therefore, the FOPs reported by Fuzhou Hengli were the FOPs of these two companies.

18.     In its response to Section D of Commerce's questionnaire, Fuzhou Hengli explained that Ecosource reported its FOPs on a consistent basis, by kilogram for all material factors, kilowatts for electricity, and hours for labor. *See* Hengli Sec. C-D Resp. at D-9. For the calculation of the unit consumption of FOPs for the final product, Ecosource used "packages" as the unit of measurement for the subject merchandise. *Id.* Importantly, Fuzhou Hengli demonstrated that its allocation of FOPs accounted for the consumption of paper inputs of different weights to the production of paper plates with different weights by allocating quantity of paper input (in kilograms) over the production quantity of all products (in kilograms). *See id.* at D-9 and Exhibit D-6.

19.     In comments on Fuzhou Hengli's Section A, C, and D questionnaire responses, Petitioner alleged for the first time that Fuzhou Hengli's FOP reporting was deficient and urged Commerce to request that Fuzhou Hengli submit a version of its FOP database that reported all FOP usage rates on a per-kilogram basis. *See* Letter to Sec'y Commerce from The Bristol Group PLLC, "Re: *Certain Paper Plates from the People's Republic of China*: Comments on Fuzhou Hengli's Section A, C, and D Questionnaire Responses" (July 15, 2024) ("Petitioner's Comments on Fuzhou Hengli's Questionnaire Responses").

20.     Commerce subsequently issued a supplemental questionnaire in which it requested that Fuzhou Hengli report all its FOP consumption usage rates on a per-kilogram basis and revise its submitted databases accordingly. Commerce requested no other changes or alternations to Fuzhou Hengli's FOP reporting methodology. Specifically, Commerce did not

7

include any notification that Fuzhou Hengli's allocation methodology was otherwise deficient. *See* Letter to Fuzhou Hengli Paper Co., Ltd, c/o Eugene Degnan, Morris Manning & Martin, LLP, "Re: Less-Than-Fair-Value Investigation of Certain Paper Plates from the People's Republic of China: Supplemental Questionnaire for Fuzhou Hengli Paper Co., Ltd." (July 26, 2024). Fuzhou Hengli timely submitted its response to Commerce's supplemental questionnaire, in which it reported its FOPs and revised its databases as requested. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Re: Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Supplemental Questionnaire Response" (Aug. 9, 2024) at 7 & Exs. SQR-12.1, SQR-12.2. Commerce did not issue any additional supplemental questionnaire or communicate to Fuzhou Hengli that it found Fuzhou Hengli's revised reporting of its FOP consumption rates deficient.

21.     On September 5, 2024, Commerce published its *Preliminary Determination*. *See Certain Paper Plates From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 72,367 (Dep't Commerce Sept. 5, 2024) ("*Preliminary Determination*"). In the *Preliminary Determination*, Commerce found that Fuzhou Hengli was not selling subject merchandise at less than fair value and calculated an estimated weighted-average dumping margin for Fuzhou Hengli of 0 percent.

22.     In its memorandum accompanying the *Preliminary Determination*, Commerce explained that it had determined that Turkey best met the "significant producer" requirement of the Act as a net importer by both value and quantity. *See* Mem. to Ryan Majerus, Deputy Assistant Sec'y for Policy and Negotiations, from Scot Fullerton, Acting Deputy Assistant Sec'y

for Antidumping and Countervailing Duty Operations, "Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Paper Plates from the People's Republic of China" (Aug. 29, 2024) ("PDM") at 7. Commerce also determined that the financial statement of Barem provided the best available information to derive surrogate financial ratios and, accordingly, used Barem's financial information for this purpose. *Id.* at 26-27.

23. The Act provides that Commerce, upon receiving a timely filed allegation of "critical circumstances," will determine whether there is a reasonable basis to believe or suspect that: (A) there is a history of dumping and material injury by reason of dumped imports, or that the importer of the merchandise knew or should have known that the exporter was selling the merchandise at less than fair value, and (B) there have been massive imports of the subject merchandise over a relatively short period of time. *See* 19 U.S.C. § 1673b(e)(1). Pursuant to its practice, Commerce considers a dumping margin of 25 percent or more for export price sales and 15 percent or more for constructed export price sales sufficient to impute importer knowledge of sales at less than fair value under criterion (A). *See* PDM at 29. Pursuant to its regulations, Commerce considers imports to have been "massive" only if they have increased by at least 15 percent during the "relatively short period" of consideration. *See* 19 C.F.R. § 351.206(h). In an investigation, critical circumstances may only be imposed if both Commerce and the International Trade Commission make affirmative findings. If Commerce finds that critical circumstances exist, the Commission must also determine that the imports in question "are likely to undermine seriously the remedial effect" of the order. 19 U.S.C. § 1673d(b)(4)(A)(i).

24. In its *Preliminary Determination*, Commerce found that, because Fuzhou Hengli's preliminary dumping margin was zero percent, its dumping did not exceed the threshold

9

of 25 percent necessary to impute knowledge of sales below fair value. Therefore, Commerce found that critical circumstances did not exist for Fuzhou Hengli. *See* PDM at 29-30. Commerce found that the imports of the other mandatory respondent, Jinhua, were "massive" and that the ITC's affirmative critical circumstances determination was sufficient to impute knowledge of sales at less than fair value, and therefore critical circumstances existed for Jinhua. *See id.* at 30.

    25.    Commerce officials then conducted verifications of the mandatory respondents, including an on-site production verification at Ecosource's factory and a review of Fuzhou Hengli's books and records at its corporate office. In its verification report, Commerce suggested that Fuzhou Hengli's reporting of its material FOP consumption usage rates for the types of paper input used in finished paper plates was "inconsistent with the production process" of paper plates because the rates were not specific to the different weights of FBB used for production of differing products. *See* Mem. to the File from Jose Rivera and Lingjun Wang, Int'l Trade Compliance Analysts, AD/CVD Operations, Office VII, "Verification of the Questionnaire Responses of Hengli Paper Co., Ltd. (Hengli) and its producer Guangdong Ecosource Environmental Technology Co., Ltd. (Ecosource)" (Dec. 17, 2024) ("Verification Report") at 16.

    26.    Commerce officials also verified, based on factory inspection reports from the suppliers of 98.79 percent of Fuzhou Hengli's paper inputs, that the input used in the products sold by Fuzhou Hengli was FBB multi-ply paper board. Verification Report at 9, 11. Commerce officials further noted that factory inspection reports of the FBB used in Fuzhou Hengli's exports demonstrated that the fiber content of the FBB consisted of a mix of mechanical pulp and chemical pulp and in no inspection report verified by Commerce did the chemical pulp content exceed 60 percent. *Id.*

10

27. In its case brief before the agency, the Petitioner argued that Commerce should apply adverse facts available to Fuzhou Hengli because of how it reported its FOPs and that Commerce should reconsider its selection of the Harmonized Tariff Schedule ("HTS") category used to value the paperboard input. See Letter to Sec'y Commerce from The Bristol Group PLLC, "Re: *Certain Paper Plates from the People's Republic of China*: Case Brief for the American Paper Plate Coalition" (Dec. 26, 2024) ("Petitioner's Case Br.") at 6-24.

28. In its rebuttal brief, Fuzhou Hengli averred that none of the statutory criteria for applying adverse facts available ("AFA") to Fuzhou Hengli were present in this case. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Re: Certain Paper Paltes from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Rebuttal Brief" (Jan. 8, 2025) ("Fuzhou Hengli Rebuttal Br.") at 30-32. Specifically, Fuzhou Hengli did not (A) withhold information that has been requested; (B) fail to provide information within the deadlines established, or in the form and manner requested by Commerce; (C) significantly impede a proceeding; or (D) provide information that could not be verified. *See* Sections 776(a)(1) and (2) of the Act, 19 U.S.C. §§ 1677e(a)(1) and (2). Further, these sections are subject to Commerce's statutory obligation, pursuant to Section 782(d) of the Act, to inform the respondent if Commerce finds its submission deficient and allow the respondent an opportunity to remedy the alleged deficiency, which Commerce did not do. *See* 19 U.S.C. § 1677m.

29. In its rebuttal brief, Fuzhou Hengli also argued that its reporting methodology for its material FOPs was reasonable based on Commerce's practice in previous cases in which respondents had allocated total consumption of a FOP across total production output to calculate per-unit consumption. *See* Fuzhou Hengli Rebuttal Br. at 32-34. Fuzhou Hengli showed that there was no distortion to its costs and in fact the reporting that Commerce found inaccurate

11

resulted in a negligible change in input quantity that could only be unfavorable to Fuzhou Hengli in the dumping calculation. *See id.* at 34-36.

30. Fuzhou Hengli further argued that Commerce was aware of Fuzhou Hengli's FOP reporting methodology during the preliminary stage of the investigation, and yet provided no notice, pursuant to its obligation to notify the respondent of deficiencies under Section 782(d) of the Act, that its submission was deficient. *See* 19 U.S.C. § 1677m(d). Fuzhou Hengli also argued that Commerce did not provide it an opportunity to cure the deficiency, in spite of the fact that the issue was clearly before Commerce, before it issued its only supplemental questionnaire to Fuzhou Hengli.

31. Fuzhou Hengli also rebutted Petitioner's argument that Commerce should reconsider its selection of the HTS category used to value Fuzhou Hengli's paperboard input. *See* Fuzhou Hengli Rebuttal Br. at 10-29. Relying on extensive evidence on the record, Fuzhou Hengli argued, among other things, that its FBB input is not "kraft paper and paperboard," that its FBB is not "bleached uniformly throughout," that its FBB is not "more than 95 percent by weight" wood fibers "obtained by a chemical process," all of which are required under the HTS category proffered by Petitioner. *Id*. Fuzhou Hengli further demonstrated that its FBB is multi-ply, as is required by the HTS category that it placed on the record, and as was verified during Commerce's verification. *Id.* at 21-22; Verification Report at 9, 11.

32. In the *Final Determination*, Commerce applied AFA to Fuzhou Hengli on the basis that it "withheld information that was requested" because it did not report consumption of its paper input FOP on a per-CONNUM basis. *See* IDM at 7-8. Commerce determined that, because of the allocation methodology employed by Fuzhou Hengli from the very beginning of this investigation, Fuzhou Hengli had withheld its FOP information and applied an adverse

12

inference in selecting the AFA rate, ultimately applying to Fuzhou Hengli a dumping margin of 515.40 percent after initially finding that Fuzhou Hengli had not sold at less than fair value at all.

33.	In the *Final Determination*, because Commerce applied AFA to Fuzhou Hengli, it made a determination as to the surrogate value of paperboard used by Jinhua but made no determination with respect to the surrogate value used by Fuzhou Hengli to value its paperboard input. *See* IDM at 18. Instead, Commerce stated that, "due to {its} total AFA finding for Fuzhou Hengli, . . . Fuzhou Hengli's arguments regarding this issue are moot and Commerce is not making a determination with regard to Fuzhou Hengli on this issue." *Id.*

34.	Finally, although Commerce had made a preliminary negative determination of critical circumstances with respect to Fuzhou Hengli, after applying AFA to Fuzhou Hengli in the *Final Determination* based on its reporting of its FOP consumption rate, and assigning Fuzhou Hengli a dumping margin of 515.40 percent, Commerce reversed its critical circumstances determination with respect to Fuzhou Hengli. Commerce concluded that Fuzhou Hengli had dumped "massive imports" over a "relatively short period," and therefore critical circumstances did exist for Fuzhou Hengli. *See* IDM at 4-5. Having "analyzed the shipment data" provided by Jinhua, Commerce also reversed its critical circumstances determination with respect to Jinhua, finding that there were no critical circumstances for Jinhua even though its final dumping margin was 267.63 percent. *See id.* at 4; *Final Determination*.

35.	The International Trade Commission's own Final Determination was published in the *Federal Register* on March 19, 2025. *See Paper Plates From China, Thailand, and Vietnam*, 90 Fed. Reg. 12,789 (Int'l Trade Comm'n Mar. 19, 2025). The International Trade Commission found that critical circumstances existed for imports of subject merchandise from China and that such imports were likely to undermine the remedial effect of the Order. Commissioner David S.

13

Johanson filed a separate view which determined that critical circumstances did not exist. *See* Paper Plates from China, Thailand, and Vietnam, Inv. Nos. 701-TA-704-705, 731-TA-1664-1666, USITC Pub. 5595 (Mar. 2025) (Final).

36. This appeal followed.

## STATEMENT OF CLAIMS

37. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

38. Commerce's *Final Determination* is unsupported by substantial evidence and is otherwise not in accordance with law in the following respects:

### Count One

39. Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40. Commerce's determination to apply adverse facts available to Fuzhou Hengli is not supported by substantial evidence and is otherwise not in accordance with law.

### Count Two

41. Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42. Commerce's determination not to accept Fuzhou Hengli's reporting methodology for its material FOPs is not supported by substantial evidence and is otherwise not in accordance with law.

### Count Three

43. Paragraphs 1 through 42 are incorporated by reference as if fully set forth herein.

44. Commerce's determination to reject, and find moot, Fuzhou Hengli's arguments regarding the surrogate value for its paperboard inputs is not supported by substantial evidence

and is otherwise not in accordance with law.

## Count Four

45. Paragraphs 1 through 44 are incorporated by reference as if fully set forth herein.

46. Commerce's determination to find that critical circumstances exist with respect to Fuzhou Hengli is not supported by substantial evidence and is otherwise not in accordance with law.

**PRAYER FOR RELIEF**

47. Wherefore, Plaintiff Fuzhou Hengli respectfully requests that this Court:

    a. hold Commerce's *Final Determination* unsupported by substantial evidence and otherwise not in accordance with law;

    b. remand the *Final Determination* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

    c. provide such other relief as this Court deems appropriate.

Respectfully submitted,

/s/ Eugene Degnan
Eugene Degnan
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Jordan L. Fleischer
Edward J. Thomas III
Nicholas C. Duffey
Ryan R. Migeed
Jenny (Shiyu) Liang

**MORRIS MANNING & MARTIN LLP**
1333 New Hampshire Ave, NW
Suite 800
Washington, D.C. 20036
(202) 216-4107

Dated: April 7, 2025

*Counsel to Fuzhou Hengli Paper Co., Ltd*