**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
|                                                   )
FUZHOU HENGLI PAPER CO., LTD.,                      )
                                                    )
                Plaintiff,                       )
                                                    )
       v.                                        )      Court No. 25-00064
                                                    )
UNITED STATES,                                      )
                                                    )
                Defendant,                       )
                                                    )
        and                                     )
                                                    )
AMERICAN PAPER PLATE COALITION,                     )
                                                    )
              Defendant-Intervenor.              )
_____)

**ORDER**

      Upon consideration of the plaintiff's Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

      ORDERED that the plaintiff's Rule 56.2 motion for judgment on the agency record is denied; and it is further

      ORDERED that judgment shall issue for the United States.


Dated: _____                  _____
     New York, New York                           JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____

| | |
|---|---|
| FUZHOU HENGLI PAPER CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Court No. 25-00064 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| AMERICAN PAPER PLATE COALITION, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| _____) | |

**DEFENDANT'S RESPONSE TO PLANTIFF'S
RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL
Heather Holman
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for
Trade Enforcement Compliance

COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Email: Collin.T.Mathias@usdoj.gov

September 30, 2025

*Attorneys for Defendant United States*

# TABLE OF CONTENTS

<u>**PAGE**</u>

DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT UPON AGENCY RECORD....................................................................................1

STATEMENT PURSUANT TO RULE 56.2...............................................................2

    I.    Administrative Determination Under Review.......................................2

    II.    Issues Presented For Review ...............................................................2

STATEMENT OF FACTS...........................................................................................2

SUMMARY OF THE ARGUMENT ...........................................................................7

ARGUMENT...............................................................................................................7

    I.    Standard Of Review...............................................................................7

    II.    Commerce's Determination To Use Facts Available With An Adverse Inference For Fuzhou Hengli Is Supported By Substantial Evidence And In Accordance With Law...............................................................................8

        A.    Legal Framework....................................................................9

        B.    Commerce Reasonably and Lawfully Used Facts Otherwise Available...10

        C.    Commerce Reasonably Applied An Adverse Inference Because Fuzhou Hengli Did Not Act To The Best Of Its Ability......................................18

    III.    Commerce's Critical Circumstances Finding Is Supported By Substantial Evidence And In Accordance With Law.............................................................22

    IV.    Commerce's Determination Not To Address The Surrogate Value Used For Paperboard Is Supported By Substantial Evidence And In Accordance With Law ...................................................................................................................24

    CONCLUSION..........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
  287 F. Supp. 3d 1361 (Ct. Int'l Trade 2018) ........................................................................ 13

*Atl. Sugar, Ltd. v. United States*,
  744 F.2d 1556 (Fed. Cir. 1984) ........................................................................................... 10

*Baroque Timber Industries (Zhongshan) Co., Ltd. v. Unted States*,
  776 F. Supp. 3d 1290 (Ct. Int'l Trade 2025) ....................................................................... 23

*Consol. Edison Co. of N.Y. v. NLRB*,
  305 U.S. 197 (1938) ............................................................................................................... 9

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ............................................................................................................... 9

*Dalian Meisen Woodworking Co. v. United States*,
  No. 20-00109, 2023 WL 3058783 (Ct. Int'l Trade April 24, 2023) ..................................... 17

*Deacero S.A.P.I. de C.V. v. United States*,
  353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ....................................................................... 26

*Deacero S.A.P.I. de C.V. v. United States*,
  996 F.3d 1283 (Fed. Cir. 2021) ..................................................................................... 11, 21

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012) ........................................................................................... 14

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034 (Fed. Cir. 1996) ............................................................................................. 10

*Hubbell Power Sys. v. United States*,
  No. 15-00312, 2019 WL 6174713 (Ct. Int'l Trade Nov. 20, 2019) ............................... 12, 21

*Maverick Tube Corporation v. United States*,
  857 F.3d 1353 (Fed. Cir. 2017) ..................................................................................... 14, 23

*Mosaic Co. v. United States*,
  647 F. Supp. 3d 1358 (Ct. Int'l Trade 2023) ....................................................................... 18

*Mukand, Ltd. v. United States*,
  767 F.3d 1300 (Fed. Cir. 2014) ........................................................................................... 21

*Nan Ya Plastics Corp. v. United States*,
    810 F.3d 1333 (Fed. Cir. 2016) ................................................................. 11

*NEXTEEL Co. v. United States,*
    392 F. Supp. 3d 1276 (Ct. Int'l Trade 2019) ................................................ 19

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ................................................................. 10

*Nippon Steel Corp. v United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ....................................................... 11, 12, 21

*NSK Ltd. v. United States*,
    481 F.3d 1355 (Fed. Cir. 2007) ................................................................. 23

*Papierfabrik August Koehler SE v. United States*,
    843 F.3d 1373 (Fed. Cir. 2016) ................................................................. 12

*Pastificio Gentile S.r.l. v. United States*,
    No. 24-00037, 2025 WL 2530748 (Ct. Int'l Trade Aug. 27, 2025) ..................... 24

*POSCO v. United States*,
    337 F. Supp.3d 1265 (Ct. Int'l Trade 2018) ................................................ 18

*QVD Food Co. v. United States*,
    658 F.3d 1318 (Fed. Cir. 2011) ................................................................. 11

*Rhone Poulenc, Inc. v. United States*,
    899 F.2d 1185 (Fed. Cir. 1990) ........................................................... 12, 16

*Saha Thai Steel Pipe Public Co. Ltd. v. United States*,
    663 F. Supp. 3d 1356 (Ct. Int'l Trade 2023) ............................................... 14

*Stupp Corporation v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021) ................................................................... 18

*Tau-Ken Temir LLP v. United States*,
    147 F.4th 1363 (Fed. Cir. 2025) ............................................................... 17

*Thai Pineapple Pub. Co. v. United States*,
    187 F.3d 1362 (Fed. Cir. 1999) ................................................................. 10

*Tianjin Magnesium Int'l Co. v. United States*,
    844 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ............................................... 12

iv

*Tianjin Tiancheng Pharm. Co. v. United States*,
  366 F. Supp. 2d 1246 (Ct. Int'l Trade 2005) ........................................................... 9

*Tri Union Frozen Prods., Inc. v. United States*,
  163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ......................................................... 19

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) .............................................................................................. 18

*Xi'an Metals & Minerals*,
  *Imp. & Exp.*, 50 F.4th 98 (Fed. Cir. 2002) ................................................ 12, 16, 17

## Statutes

19 U.S.C. § 1673d(a)(3) ......................................................................................... 25

19 U.S.C. § 1677(c) ............................................................................................. 6, 7

19 U.S.C. § 1677b ............................................................................................ 13, 16

19 U.S.C. § 1677e(a) ....................................................................................... passim

19 U.S.C. § 1677e(b) .................................................................................. 10, 11, 19

19 U.S.C. § 1677m(d) ..................................................................................... passim

## Regulations

19 C.F.R. § 351.102(b)(21) .................................................................................... 18

19 C.F.R. § 351.301(c) ...................................................................................... 19, 24

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
                                                    )
FUZHOU HENGLI PAPER CO., LTD.,                       )
                                                    )
                            Plaintiff,              )
                                                    )
            v.                                       )        Court No. 25-00064
                                                    )
UNITED STATES,                                       )
                                                    )
                            Defendant,              )
                                                    )
            and                                      )
                                                    )
AMERICAN PAPER PLATE COALITION,                      )
                                                    )
                            Defendant-Intervenor.   )
_____)


### DEFENDANT'S RESPONSE TO PLANTIFF'S
### RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully responds to the motion for judgment on the agency record (Fuzhou Hengli Br., ECF No. 38) filed by plaintiff, Fuzhou Hengli Paper Co., Ltd. (Fuzhou Hengli), challenging aspects of the United States Department of Commerce's final determination in the antidumping duty investigation of paper plates from the People's Republic of China (China). As demonstrated below, Commerce's final determination is supported by substantial evidence and is in accordance with law. Therefore, we respectfully request that Court deny the motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

**I.    Administrative Determination Under Review**

The administrative determination under review is the final determination of the less-than-fair-value investigation of paper plates from China. *Certain Paper Plates from the People's Republic of China*, 90 Fed. Reg. 8,271 (Dep't of Commerce Jan. 28, 2025) (P.R. 360)[1] and accompanying Issues & Decision Memorandum (IDM) (P.R. 299). The period of investigation is July 1, 2023, through December 31, 2023.

**II.    Issues Presented For Review**

1. Whether Commerce's application of adverse facts available is supported by substantial evidence and in accordance with law.

2. Whether Commerce's critical circumstances finding, based on the application of adverse facts available, is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

On February 14, 2024, Commerce initiated an investigation into whether paper plates from China were being sold in the United States at less-than-fair-value. *See Certain Paper Plates from the People's Republic of China, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 14,046 (Dep't of Commerce Feb. 26, 2024) (P.R. 47). On April 22, 2024, Commerce chose Fuzhou Hengli Paper Co., Ltd. (Fuzhou Hengli) and Jinhua P&P Product Co., Ltd. (Jinhua), as the mandatory respondents in the investigation. *See* Respondent Selection Memo. (Apr. 22, 2024) (P.R. 138, C.R. 78).

---

[1] Citations to the public documents (P.R.) and confidential documents (C.R.) refer to the record of the underlying administrative review.

On April 24, 2024, Commerce issued its initial questionnaire to Fuzhou Hengli.  *See* Commerce's Initial Questionnaire (Apr. 24, 2024) (P.R. 146).  In this questionnaire, Commerce requested that Fuzhou Hengli in sections C and D report its U.S. sales and factors of production (FOPs, *i.e.*, material inputs) on a matching control number (CONNUM)-specific basis.  *Id.* at C-5, D-1, D-6.  Specifically, Commerce instructed that Fuzhou Hengli should assign "a control number to each unique product report" and "{i}dentical products should be assigned the same control number."  *Id.* at C-5.  Further, Commerce required that Fuzhou Hengli "provide a detailed explanation of how you derived your estimated FOP consumption for merchandise under investigation on a CONNUM-specific basis and explain why the methodology you selected is the best way to accurately demonstrate an accurate consumption amount."  *Id.* at D-2.

Fuzhou Hengli responded to Sections C and D of Commerce's Initial Questionnaire.  *See* Fuzhou Hengli's Sections C and D Initial Questionnaire Responses (June 20, 2024) (P.R. 210, C.R. 114-117).  In its response, instead of using metric tons or kilograms as defined by Commerce as unit of measure for quantity, Fuzhou Hengli reported U.S. sales and FOP consumptions based on "package," and certified that this reporting of FOP consumption was CONNUM-specific.  *Id.* at C-18 and D-4.  However, Fuzhou Hengli reported the FOPs themselves "on a consistent basis, kilograms."  *Id.* at D-12.  This reporting prevented Commerce from comparing products sold (measured in packages) and material consumed (measured in kilograms) by CONNUM which would have allowed Commerce to detect under-reported material consumption, which could lower normal value, and thus distort the antidumping margin.

On July 26, 2024, pursuant to 19 U.S.C. § 1677m(d), Commerce issued a supplemental questionnaire to Fuzhou Hengli.  Commerce's Supplemental Questionnaire for Fuzhou Hengli, (July 26, 2024) (P.R. 264, C.R. 143).  The supplemental questionnaire warned that "{i}f

Commerce does not receive either the requested information or a written extension request . . ., we may conclude that Fuzhou Henglis has decided not to cooperate in this proceeding." *Id.* at 2. The supplemental questionnaire required Fuzhou Hengli to, among other things, (1) report U.S. sales by kilogram; (2) report product quantity by kilogram, and (3) report all factor consumption usage rates on a per kilogram basis. *Id.* at 6.[2]   On August 12, 2024, Fuzhou Hengli submitted its supplemental questionnaire response.  Fuzhou Hengli's Supplemental Questionnaire Response (SQR) at 7 and Ex. SQR-12.1, SQR-12.2 (Aug. 12, 2024) (P.R. 278, C.R. 170).  Fuzhou Hengli stated that it "made the necessary adjustments," and that "{a}ll factor consumption usage rates have now been reported on a per KG basis." *Id.* at 7.

Meanwhile, on June 11, 2024, the American Paper Plate Coalition ("APPC") alleged that critical circumstances existed during the POI.  *See* APPC Critical Circumstances Allegation (June 11, 2024) (P.R. 198).  In particular, APPC alleged that U.S. importers knew or should have known that imports of paper plates from China were being sold at less than fair value and were likely to cause material injury, and that there had been massive imports over a relatively short period, so Commerce should find that critical circumstances exist.  *Id.*

On September 5, 2025, Commerce published its Preliminary Determination.  *See Certain Paper Plates from the People's Republic of China*, 89 Fed. Reg. 72, 367 (Dep't of Commerce Sept. 5, 2024) (P.R. 313), and accompanying Preliminary Issues and Decision Memorandum (PDM) (P.R. 299).  In its Preliminary Determination, in accordance with 19 U.S.C. § 1677(c)(1), Commerce calculated normal value by multiplying the reported per-kilogram FOP consumption

---

[2] *See* Commerce's Supplemental Questionnaire at 6 (Question 12: "Fuzhou Hongli reported certain factors of production on a per pack basis (see Exhibits D6 and D-7). Please report all factor consumption usage rates on a per KG basis and revise the individual and combined FOP databases accordingly;" Question 13: "Please add the individual product matching characteristics in the FOB database").

rates by publicly available surrogate values. *Id.* Further, Commerce preliminarily found that critical circumstances were not present for Fuzhou Hengli's exports. *Id.* at 29-30. Commerce generally finds critical circumstances if margins using export price sales are 25 percent or more, or using constructed export price, sales are 15 percent or more. *Id.* at 29. Because Fuzhou Hengli's margin was less than 25 percent, Commerce found no critical circumstances. *Id.*

Following the Preliminary Determination, Commerce conducted verification of Fuzhou Hengli's books and records, which included verification of one of its two producers, Guangdong Ecosource Environmental Technology Co., Ltd (Ecosource). *See* Fuzhou Hengli Verification Report (Dec. 17, 2024) (P.R. 335, C.R. 313). At verification, Commerce discovered that Fuzhou Hengli incorrectly reported Ecosource's FOPs because the material (paper input or paperboard) allocation was inconsistent with the production process. *Id.* at 16. The production process is that a paper plate is made from paper input with same (corresponding) basis weight, specifically a one-to-one match of basis weight. *Id.* The basis weight is one of product characteristics that Commerce requires in its factors of production reporting. IDM at 13-14.

In response to Commerce's request for a detailed description of production process, Fuzhou Hengli provided a production flow chart but did not report the one-to-one match of basis weight. Fuzhou Hengli's Initial Questionnaire Response at D-4 and Exhibit D-2. While the production process is a one-to-one match of basis weight, the reported FOP consumption is that a paper plate of one basis weight consumed different paper inputs of different basis weights, *i.e.*, a many-to-one match of basis weight. Verification Report at 16. The many-to-one match is uniformly applied to all products (CONNUMs) in the FOP database for the normal value calculation. Fuzhou Hengli's Initial Questionnaire Response at D-6. Fuzhou Hengli's failure to properly account for the basis weight of the input paperboard as it corresponds to that of the final

plate amounts to a failure to report accurate consumptions for Commerce to calculate normal values. Commerce's Initial Questionnaire at C-5 and D-6; Commerce's Supplemental Questionnaire at 6.

On January 28, 2025, Commerce issued its Final Determination. *Certain Paper Plates from the People's Republic of China*, 90 Fed. Reg. 8,271 (Dep't of Commerce Jan. 28, 2025) (P.R. 360) and accompanying IDM (P.R. 354). Given the inaccuracies in Fuzhou Hengli's FOP reporting, Commerce determined that Fuzhou Hengli withheld information requested of it, failed to provide the information in the form and manner that Commerce requested and significantly impeded the preceding. IDM at 8. As a result, Commerce applied facts otherwise available to Fuzhou Hengli, in accordance with 19 U.S.C. § 1677e(a)(2)(A), (B), and (C). *Id.* Furthermore, because Commerce verified that Fuzhou Hengli normally matches the basis weight of the input paperboard with that of the final finished product, Commerce determined that Fuzhou Hengli could have provided Commerce with the proper information, but failed to do so, amounting in a failure to act to the best of its ability. *Id.*; Verification Report at 16. Therefore, Commerce used an adverse inference when choosing from the facts otherwise available in calculating Fuzhou Hengli's rate. *Id.*

Additionally, in the Final Determination, because Commerce applied total adverse facts available (AFA) rate to Fuzhou Hengli, it was unnecessary to consider arguments regarding its surrogate value calculations. IDM at 18. Furthermore, Commerce determined, based on Fuzhou Hengli's total AFA rate, that Fuzhou Hengli had imputed knowledge of sales below market value, material injury and massive imports over a relatively short period, and appropriately determined that critical circumstances existed for Fuzhou Hengli. IDM at 4.

## SUMMARY OF THE ARGUMENT

This Court should sustain Commerce's Final Determination because Commerce's application of adverse facts available is supported by substantial evidence and in accordance with law. In its initial and its supplemental questionnaire, Commerce specifically asked for CONNUM-specific reporting, which included product matching characteristics. In responding to these questionnaires, Fuzhou Hengli withheld the information Commerce requested, failed to respond in the form and manner requested, and significantly impeded the proceeding. Furthermore, Commerce verified that Fuzhou Hengli could have reported its factors of production accurately but failed to act to the best of its ability to do so. As a result, Commerce appropriately applied total adverse facts available when calculating Fuzhou Hengli's antidumping duty rate. Because Commerce's determination is based on total adverse facts available and its total adverse facts available finding is supported by substantial evidence and is in accordance with law, Fuzhou Hengli's arguments regarding surrogate values and critical circumstances fail.

## ARGUMENT

### I.    Standard Of Review

In reviewing Commerce's antidumping duty determinations, the Court sustains any determination made by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Tianjin Tiancheng Pharm. Co. v. United States*, 366 F. Supp. 2d 1246, 1249 (Ct. Int'l Trade 2005) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). Even if it is possible to draw two inconsistent conclusions from the

record evidence, this does not mean that Commerce's findings are unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

This Court defers to Commerce's "selection and development of proper methodologies." *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (citation omitted). Moreover, Commerce is accorded particular deference in antidumping and countervailing duty determinations. *See, e.g., Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts.").

## II.    Commerce's Determination To Use Facts Available With An Adverse Inference For Fuzhou Hengli Is Supported By Substantial Evidence And In Accordance With Law

Fuzhou Hengli failed to report CONNUM-specific factors of production, information essential for Commerce to accurately calculate normal value. Thus, Fuzhou Hengli clearly failed to report necessary information, which significantly impeded the proceeding. 19 U.S.C. § 1677e(a)(2)(A), (B) and (C). Furthermore, Commerce verified that Fuzhou Hengli could have accurately reported the information that Commerce requested, but failed to do so. Fuzhou Hengli Verification Report at 16; IDM at 14. Commerce reasonably determined that Fuzhou Hengli failed to corporate by not acting to the best of its ability to comply with Commerce's

request for information. IDM at 14; 19 U.S.C. § 1677e(b). Therefore, Commerce's determination to apply adverse facts available to Fuzhou Hengli is supported by substantial evidence and in accordance with law.

### A.   <u>Legal Framework</u>

During an antidumping duty administrative review, Commerce gathers information from respondent foreign producers and exporters to determine whether dumping has occurred and, if it has, to calculate dumping margins. "{T}he burden of creating an adequate record lies with interested parties and not with Commerce." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337 (Fed. Cir. 2016) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)). Commerce applies the facts otherwise available to make a determination when necessary information is unavailable, or when an interested party withholds information requested by Commerce, fails to provide the information by the deadline, significantly impedes the proceeding, or provides information that cannot be verified. *See* 19 U.S.C. § 1677e(a)(1)-(2). Commerce may also apply an adverse inference in selecting among the facts otherwise available if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b)(1) ("If the administering authority . . . finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information . . . , the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available{.}"); *see Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1295-96 (Fed. Cir. 2021).

Although section 1677e does not define "the best of its ability," the Federal Circuit has interpreted this phrase as requiring a "respondent to do the maximum it is able to do." *Nippon Steel Corp. v United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003).   It has further explained:

> The best-of-one's-ability standard "does not require perfection and recognizes that mistakes sometimes occur," but "it does not condone inattentiveness, carelessness, or inadequate record keeping." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  The standard expects respondents to "(a) take reasonable steps to keep and maintain full and complete records ...; (b) have familiarity with all of the records it maintains in its possession, custody, or control; and (c) conduct prompt, careful, and comprehensive investigations of all relevant records that refer or relate to the imports in question." *Id.*

*Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1379 (Fed. Cir. 2016).  This Court has reasoned that "intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate." *Hubbell Power Sys. v. United States*, No. 15-00312, 2019 WL 6174713, at *2 (Ct. Int'l Trade Nov. 20, 2019) (quoting *Nippon Steel*, 337 F.3d at 1383) (emphasis added).  The Federal Circuit has sustained Commerce's use of an adverse inference when a respondent fails to report FOPs on a CONNUM-specific basis "{if} a methodology for recordkeeping could have been easily derived." *Xi'an Metals & Minerals Imp. & Exp.*, 50 F.4th 98, 109 (Fed. Cir. 2002).  Ultimately, "Commerce enjoys broad discretion when considering whether to apply adverse facts available in antidumping proceedings." *Tianjin Magnesium Int'l Co. v. United States*, 844 F. Supp. 2d 1342, 1346 (Ct. Int'l Trade 2012).

## B.  <u>Commerce Reasonably and Lawfully Used Facts Otherwise Available</u>

Commerce acted reasonably and in accordance with law by using facts otherwise available in calculating Fuzhou Hengli's antidumping duty margin because Fuzhou Hengli's failure to appropriately report its FOPs amounts, which significantly impeded Commerce's ability to accurately calculate normal value.  IDM at 8; 19 U.S.C. § 1677e(a)(2)(A), (B), and (C).

10

This information was necessary to determine dumping margins "as accurately as possible" because a reliable normal value, which in this case is based on FOPs, is critical for calculating an accurate dumping margin. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

In non-market economy cases, Commerce calculates normal value based on how much of an input is used to make a product (defined by its control number, or CONNUM), and the surrogate value for the input. *See* 19 U.S.C. § 1677b(a); *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 37,116 (Dep't of Commerce June 23, 2003), and accompanying IDM at 21 (*Fish Fillets* IDM). "Using CONNUMs, Commerce defines the key physical characteristics of the subject merchandise as those that are commercially meaningful in the U.S. marketplace, and have an impact on costs of production." *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 287 F. Supp. 3d 1361, 1368 (Ct. Int'l Trade 2018) (internal quotation omitted).

For example, a party might report a CONNUM A and a CONNUM B, both of which use steel as an input, but where CONNUM B uses twice as much steel as CONNUM A. Because it would have twice as high a factor of production for steel, CONNUM B would have a much higher normal value than CONNUM A. Thus, if a respondent does not differentiate across CONNUMs in reporting its factors of production, Commerce would not know whether the CONNUMs use the same amount of an input, and would therefore be unable to accurately calculate the normal value. Accordingly, it is critical that Commerce has CONNUM-specific factors of production so that it can compare the home market CONNUMs to the United States CONNUMs to determine if dumping exists. *See Fish Fillets* IDM at 21.

11

Commerce will use "facts otherwise available" to fill gaps in the record if: (1) necessary information is not available, or (2) an interested party (a) withholds information requested by Commerce, (b) fails to provide the information in the form or in the manner requested, (c) significantly impedes the proceeding, or (d) provides information that cannot be verified. 19 U.S.C. § 1677e(a). Before Commerce applies facts otherwise available, it must inform the respondent about the nature of the deficiency and allow the respondent an opportunity to explain or to remedy the deficiency to the extent practicable. 19 U.S.C. § 1677m(d). A supplemental questionnaire is a deficiency notice pursuant to 19 U.S.C. § 1677m(d). *Maverick Tube Corporation v. United States*, 857 F.3d 1353, 1360 (Fed. Cir. 2017) (respondent "was on notice that its initial response was deficient because Commerce issued the supplemental questionnaire seeking the same information."); *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275-76 (Fed. Cir. 2012) (holding that, where Commerce issued repeated requests for the same information and the company still failed to timely report accurate information, Commerce could apply facts available); *see also Saha Thai Steel Pipe Public Co. Ltd. v. United States*, 663 F. Supp. 3d 1356, 1373-74 (Ct. Int'l Trade 2023) ("Commerce complied with § 1677m(d) by virtue of its series of questionnaires in which the agency repeatedly asked for information about Saha Thai's potential affiliates.")

Here, Commerce asked Fuzhou Hengli in its initial questionnaire to report input consumption on a per unit basis. Initial Questionnaire at D-5 (P.R. 146). This means that Fuzhou Hengli was required to submit how many kilograms of input went into producing a certain number of kilograms of the finished product (or CONNUM). Commerce reasonably concluded that Fuzhou Hengli failed to follow instructions, despite stating that Fuzhou Hengli reported FOPs on a CONNUM-specific basis and certifying that this submission was accurate

12

and complete.  Initial Questionnaire Response (P.R. 210) at D-6, Company Certification and

Counsel Certification; IDM at 13.   In fact, in its initial response, Fuzhou Hengli commingled

multiple paper board inputs, with differing basis weights, when reporting the rates of material

consumption for each wrapped package of paper plates (*i.e.,* plate packs with different numbers

of plates in each pack).  *See* Fuzhou Hengli Initial Questionnaire Response at Exhibit D-6 (C.R.

106).

Given that Fuzhou Hengli reported FOPs on a per-pack basis, rather than on a per-unit (or

per-kilogram) basis as Commerce requested, and failed to appropriately match its product

characteristics, Commerce notified Fuzhou Hengli of its deficient response, asked it to re-submit

its FOP reporting on a per-unit basis and to match product characteristics in a supplemental

questionnaire.  Supplemental Questionnaire at 6 (P.R. 265).

In its supplemental response, Fuzhou Hengli remedied a portion of its deficient response,

and submitted its FOPs on a per-unit basis, but continued to comingle the paperboard inputs for

each CONNUM.  Fuzhou Hengli Supplemental Questionnaire Response at Exhibits 12.1 and

12.2 (C.R. 161, C.R. 162).  In its supplemental response, the reported kilograms of consumption

were identical for every CONNUM even though the CONNUMs encompassed different models

with different characteristics.  *Id.*  Therefore, the reported consumption rates were reflective of

the consumption of all types of input paperboard, which did not account for the fact that all basis

weights were not used for all CONNUMs.  As a result, Commerce reasonably determined that

Fuzhou Hengli's response was not on a CONNUM-specific basis as needed.  IDM at 13.

At verification, Commerce confirmed that Fuzhou Hengli's reporting of multiple

paperboard inputs with different paperweights is an inaccurate reflection of the production

process.  IDM at 13.  Rather, Commerce learned that, in the paper plate production process, a

paper plate with a given basis weight can only be made with a paperboard input with that same basis weight (*i.e.* if a paper plate has a basis weight of 270 g/m2, it can only be made from a paperboard input with a basis weight of 270 g/m2). *Id.*; Verification Report at 16 (P.R. 335). Therefore, Commerce could not accurately calculate Fuzhou Hengli's cost of production because Fuzhou Hengli reported multiple types of paper board input for one type of paper plate output, when Fuzhou Hengli actually only used one type of paper board input for one type of paper plate output. Verification Report at 16. Additionally, Fuzhou Hengli reported the identical kilograms of consumption for every CONNUM despite differences in CONNUM basis weights. *Id.*

Commerce requests complete information on FOPs to accurately calculate the normal value for companies located in non-market economy countries like China. 19 U.S.C. § 1677b(c)(1). To most accurately calculate the normal value, Commerce reasonably requires parties to submit factors of production, including requiring that parties submit information on a CONNUM-specific basis. *Xi'an Metals & Minerals Imp. & Exp. Co. v. United States*, 50 F.4th 98, 108 (Fed. Cir. 2022) (upholding Commerce's CONNUM-specific FOP reporting requirement). Here, because Fuzhou Hengli failed to accurately report necessary information on CONNUM-specific bases, Fuzhou Hengli failed to report its factors of production in the form and manner that Commerce requested. Fuzhou Hengli's failure to accurate report demonstrates a clear failure to comply with 19 U.S.C. § 1677e(a) and warrants Commerce's application of facts available in order to fulfil its duty to "calculate dumping margins as accurately as possible." *Rhone Poulenc*, 899 F.2d at 1191.

Fuzhou Hengli argues that its reporting was not deficient because it allocated input paperboard in the same way that it allocated its use of other inputs, specifically only to "the plates that used it." Fuzhou Hengli Br. at 18. However, Commerce requested that Fuzhou

Hengli allocate all inputs to "the plates that used it." Commerce's Initial Questionnaire at D-2. Although Fuzhou Hengli appropriately allocated other inputs, such as inks and stabilizers, only to the plates that used it, it allocated its paperboard inputs to plates that *did not use it*. *See* Verification Report at 16. Fuzhou Hengli reported multiple basis weights of paperboard input to a single type of plate. *See id.* However, because of the nature of production process, that type of plate could only use one type of input paperboard. *Id.* Therefore, contrary to Commerce's initial questionnaire and supplemental questionnaire instructions, Fuzhou Hengli inaccurately reported extraneous paperboard inputs that were not used by the specific plate CONNUM in question. IDM at 13; Fuzhou Hengli's Initial Questionnaire Response at Exhibit D-6; Fuzhou Hengli's Supplemental Questionnaire Response at Exhibits SQR-12.1, SQR-12.2 and SQR-13. Commerce therefore appropriately found that Fuzhou Hengli's responses were deficient.

Fuzhou Hengli further argues that its reporting is accurate because the basis weight of the input paperboard is not relevant to the margin calculation. Fuzhou Hengli Br. at 19-20. However, Fuzhou Hengli merely disagrees with Commerce's reporting requirements. Commerce is permitted to require CONNUM-specific reporting, as it did here. *Xi'an Metals & Minerals Imp. & Exp. Co.*, 50 F.4th at 108; *Tau-Ken Temir LLP v. United States*, 147 F.4th 1363, 1376 (Fed. Cir. 2025) ("*{P}arties cannot unilaterally decide whether and when Commerce actually needs the information it as requested*.") (emphasis added); *Dalian Meisen Woodworking Co. v. United States*, No. 20-00109, 2023 WL 3058783, at *3 (Ct. Int'l Trade April 24, 2023) ("But the statute itself requires that a party either respond as Commerce directs or else ask permission to proceed differently--a party cannot unilaterally decide that it will provide something different.").

Fuzhou Hengli's argument is that it disagreed with what Commerce asked for and offered a reasonable substitute. Fuzhou Hengli Br. at 19. Fuzhou Hengli's disagreement does not alleviate its duty to respond to Commerce's questionnaire as Commerce instructed, or alternatively to notify Commerce, in advance, about difficulties in submitting the requested information and ask permission to proceed differently. *See Dalian Meisen*, 2023 WL 3058783, at *3. Fuzhou Hengli was required to respond to Commerce's questionnaire in the form and manner it requested, regardless of whether it considered Commerce's questions to be relevant. *See Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,* 435 U.S. 519, 543-44 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties"); *see also POSCO v. United States*, 337 F. Supp.3d 1265, 1276 (Ct. Int'l Trade 2018) ("Respondents should be forthcoming with information, regardless of their views on relevancy, in the event the agency finds differently"); *Mosaic Co. v. United States*, 647 F. Supp. 3d 1358, 1369 (Ct. Int'l Trade 2023) (Commerce has "considerable discretion in deciding whether a party has sufficiently replied to an information request.").

Further, Fuzhou Hengli asserts that there is a small difference in input quantities between Fuzhou Hengli's noncompliant reporting and what it would have reported had it complied with Commerce's requests. Fuzhou Hengli Br. at 19-20. Not only if this argument irrelevant, but it relies on non-record information that Commerce did not consider. Fuzhou Hengli cites to "Hengli's Rebuttal Br. at Attachment I," *see id.*, but that document is not part of Commerce's record or in the administrative record index produced to the Court, *see* ECF No. 30-1 at 22; Fuzhou Hengli Rebuttal Br. (Jan. 8, 2025) (P.R. 346, C.R. 318). Accordingly, this Court should

disregard any reliance on this attachment because factual information must be submitted on the record for Commerce to consider. 19 C.F.R. § 351.102(b)(21) (defining "factual information" to include "evidence, including statements of fact, documents, and data"); *see also Stupp Corporation v. United States*, 5 F.4th 1341, 1348-51 (Fed. Cir. 2021) (concluding that Commerce had properly rejected non-record academic text). Commerce must base its determination on the information before it on this record. 19 U.S.C. § 1516a(b)(1)(B)(i). It follows, logically, that Commerce's determination cannot be undermined by a document that was not on the record before it. Although Fuzhou Hengli referenced the attachment in its rebuttal brief, and it may have intended to file it or even attempted to do so, the attachment never appeared on the docket of the investigation, where Commerce's case team and other interested parties would have been able to see it. Because Fuzhou Hengli relies on information in a document that is not part of the administrative record, the Court should disregard this non-record material and any argument that relies on it.[3]

Regardless, the relevant fact is that Fuzhou Hengli did not report its inputs in the form and manner that Commerce requested. *See* IDM at 13-14; Verification Report at 16. Commerce

---

[3] Additionally, based on Fuzhou Hengli's characterization of Attachment I in its brief, it contained worksheets with new calculations or analysis, which Fuzhou Hengli apparently intended to unveil for the first time as part of its rebuttal brief. Commerce's regulations provide a specific and thorough framework for submitting factual information and state that Commerce "will not consider or retain in the official record of the proceeding . . . untimely filed factual information." 19 C.F.R. § 351.302(d)(1)(i); *see also* 19 C.F.R. § 351.301(c). The rebuttal brief stage is not an appropriate time to submit this new information because Commerce would not have the ability to verify the information as accurate and parties could not comment on any filed information. *Tri Union Frozen Prods., Inc. v. United States*, 163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) (sustaining Commerce's rejection of an importer's self-calculated duty margins as new factual information, even though the underlying data was part of the administrative record). Thus, even if Fuzhou Hengli successfully filed this attachment, Commerce would have been well within its discretion to reject the untimely new information. *See NEXTEEL Co. v. United States,* 392 F. Supp. 3d 1276, 1291 (Ct. Int'l Trade 2019) (upholding Commerce's rejection of new factual information contained in a rebuttal brief).

is not required to determine a dumping margin based on "assumptions about the information the interested party would have provided if the interested party had complied with the request for information." 19 U.S.C. § 1677e(b)(1)(B); *see also* Statement of Administrative Action (SAA), 1994 U.S.C.C.A.N. at 4198 ("{W}here Commerce uses the facts available to fill gaps in the record, proving that the facts selected are the best alternative facts would require that the facts available be compared with the missing information, which obviously cannot be done").

Accordingly, when Commerce concluded that Fuzhou Hengli's paperboard input reporting was deficient, Commerce reasonably exercised its discretion to find that Fuzhou Hengli withheld information requested by Commerce, failed to provide the information in the form and manner requested, and significantly impeded the investigation. IDM at 13. As a result, Commerce's decision to use facts otherwise available was supported by substantial evidence on the record and in accordance with law.

**C.    Commerce Reasonably Applied An Adverse Inference Because Fuzhou Hengli Did Not Act To The Best Of Its Ability**

Commerce reasonably applied AFA to Fuzhou Hengli based upon Commerce's determination that "Fuzhou Hengli possessed CONNUM-specific FOP reporting data and did not report its FOPs in the manner requested." IDM at 14. This Court should sustain that determination.

As discussed above, Fuzhou Hengli's reported CONNUMs differed by basis weight. The basis weight corresponds to how heavy a particular plate is. Verification Report at 16 (P.R. 335). During the period of investigation, Fuzhou Hengli sold paper plates of two different basis weights: 250 g/m2 and 270 g/m2. IDM at 13. However, the paperboard input field in Fuzhou Hengli's FOP reporting is identical for both basis weights, and includes paperboard input of 250 g/m2, 270 g/m2 and other weights all mingled together in its reporting. Verification Report at 16

18

(P.R. 335).  Fuzhou Hengli has not suggested that this is not an accurate representation of the reporting.

Critically, at verification, Commerce verified that Fuzhou Hengli ordinarily tracks consumption of inputs on a product-specific basis.  *See* Verification Report at 16.  In its initial questionnaire, Commerce specifically requested that Fuzhou Hengli report its factors of production according to its "normal accounting system."  Commerce's Initial Questionnaire at D-1.  Had Fuzhou Hengli followed Commerce's questionnaire instructions and its normal accounting system, Fuzhou Hengli could have reported its paperboard inputs correctly.  Thus, Commerce reasonably found that Fuzhou Hengli failed to do so.  *See* IDM at 14.  Moreover, Fuzhou Hengli failed to correct its reporting when Commerce provided it with an opportunity to do so in a supplemental questionnaire.  Accordingly, Commerce reasonably found that Fuzhou Hengli failed to exert its "maximum effort."  IDM at 14; *see also Hubbel Power* 2019 WL 6174713, at *2; *Nippon Steel*, 337 F.3d at 1382-83.  On these facts, had Commerce not applied an adverse inference in this instance, it would have directly contradicted the purpose of the AFA provisions, which is to induce parties to cooperate.  *See* SAA, 1994 U.S.C.C.A.N. at 4198 ("where a party has not cooperated, Commerce and the Commission may employ adverse inferences about the missing information to ensure that a party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully").

In *Deacero S.A.P.I.*, the Federal Circuit upheld Commerce's application of AFA when a respondent failed to accurately report its cost of production data because "it is reasonable for Commerce to expect that more forthcoming responses should have been made" in light of the fact that "cost of production data is 'a fundamental element in the {anti}dumping analysis.'" *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283 (Fed. Cir. 2021) (citing *Nippon Steel*,

19

337 F.3d at 1383; *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1307 (Fed. Cir. 2014)).  Here, similarly, it was reasonable for Commerce to expect a "more forthcoming" response from Fuzhou Hengli when it tracked the basis weight of the input paperboard to that of the final paper plate in its normal course of business.  Verification Report at 16.  Thus, as in *Deacero S.A.P.I.*, Commerce's determination to apply adverse facts available is in accordance with law.

Fuzhou Hengli asserts that "its reporting methodology has been consistently transparent," and that "it could not be more evident that Fuzhou Hengli reported all paperboard as one input" instead of how Commerce requested.  Fuzhou Hengli Br. at 23-24.  This argument appears to suggest that Commerce should have been aware of the flaws in Fuzhou Hengli's reporting.  But it was not until verification that Commerce learned that Fuzhou Hengli did track FOPs on a product-specific basis and could have reportedly according to Commerce's instructions.  *See* Verification Report at 16.  Fuzhou Hengli does not contest that it failed to report paperboard input on a CONNUM-specific basis when it was possible for it do so.  Thus, Fuzhou Hengli cannot undermine Commerce conclusion that "Fuzhou Hengli has the ability to match paperboard inputs to paper plates by basis weight to report a CONNUM-specific consumption rate."  IDM at 13.

Fuzhou Hengli argues that Commerce failed to notify it of a deficiency for which it claims notice was required pursuant to 19 U.S.C. § 1677m(d), and that Commerce is therefore prohibited from applying AFA.  Fuzhou Hengli Br. at 24-25.  Specifically, Fuzhou Hengli contends that Commerce's supplemental questionnaire was an inadequate notification of its deficient paperboard input reporting.  *Id.* at 26.  However, the record evidence demonstrates otherwise.  Commerce's supplemental questionnaire alerted Fuzhou Hengli to Commerce's concerns with reporting and provided an opportunity to correct.

In the initial questionnaire, Commerce specifically required FOP reporting on a CONNUM-specific basis.  Commerce's Initial Questionnaire at D-2.  Fuzhou Hengli's initial response reported paperboard inputs, and other FOPs, according to how many kilograms of input went into each package.  Fuzhou Hengli's Initial Questionnaire Response at Exhibits D-6 and D-7.  This deficient reporting led to Commerce's supplemental questionnaire, which expressly instructed Fuzhou Hengli to "report all factor consumption usage rates on a per KG basis and revise the individual and combined FOP databases accordingly" and to "add the individual product matching characteristics in the FOP database."  Commerce's Supplemental Questionnaire at 6.  Commerce's supplemental questionnaire must necessarily be viewed in the context of the initial questionnaire.  That Commerce asked for the FOP on a per-kilogram basis does not erase the original requirement that the FOP be reported on a CONNUM-specific basis.  Importantly, Fuzhou Hengli's supplemental response reported that the amount of kilograms for paperboard input was identical for all CONNUMs regardless of their characteristics and did not correspond to the appropriate amount of kilograms for the final product.  Fuzhou Hengli's SQR at 7 and Ex. SQR-12.1, SQR-12.2 (C.R. 170); IDM at 13.  Thus, Fuzhou Hengli failed to report its paperboard inputs on a CONNUM-specific basis after Commerce alerted Fuzhou Hengli to the necessity of such reporting.  IDM at 14.

Commerce fulfils the requirement under 19 U.S.C. § 1677m(d) to notify respondents of a deficient response to its initial questionnaire when a supplemental questionnaire, "specifically point{s} out and requests{s} clarification of deficient responses."  *See Baroque Timber Industries (Zhongshan) Co., Ltd. v. Unted States*, 776 F. Supp. 3d 1290, 1309 (Ct. Int'l Trade 2025) (citing *NSK Ltd. v. United States*, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007)); *Maverick Tube Corporation*, 857 F.3d at 1360.  In this supplemental questionnaire, Commerce "point{ed}

out" that Fuzhou Hengli's product matching characteristics were deficient, and "request{ed} clarification" of this deficient response. *NSK Ltd.*, 481 F.3d at n.1; Commerce's Supplemental Questionnaire at 6. Although Commerce did not discover the full extent of Fuzhou Hengli's deficient reporting until verification, the discovery of additional information not previously reported until verification justifies the application of an adverse inference. *See Pastificio Gentile S.r.l. v. United States*, No. 24-00037, 2025 WL 2530748, *5 (Ct. Int'l Trade Aug. 27, 2025).

Finally, Fuzhou Hengli argues that, compared to other paper plate investigations, Commerce provided Fuzhou Hengli less time to respond to the supplemental questionnaire and issued fewer, which Fuzhou Hengli asserts demonstrates that Commerce should have done more. Fuzhou Hengli Br. at 28-29. Not so. There is nothing in the statute or regulations requiring Commerce to issue a supplemental questionnaire at a certain time, and nothing in the statute or regulations requiring Commerce to submit multiple supplemental questionnaires notifying a respondent of its deficient response. *See* 19 C.F.R. § 351.301(c)(1) (time limits for submission of factual information in response to a supplemental questionnaire); 19 U.S.C. § 1677m(d) (Commerce's requirement to notify parties of deficient responses). And to the extent that Fuzhou Hengli argues that in this case questionnaires were more limited in scope or less numerous than those in other proceedings, its argument undermines its contention that it should have been given more time to respond.

## III.    Commerce's Critical Circumstances Finding Is Supported By Substantial Evidence And In Accordance With Law

In its Final Determination, Commerce made adverse inferences against Fuzhou Hengli that resulted in a finding that critical circumstances existed as to Fuzhou Hengli. In its brief, Fuzhou Hengli asserts that the Court should require Commerce to reverse the application of AFA, which would require Commerce to recalculate Fuzhou Hengli's dumping margin (which

would effectively eliminate the critical circumstances finding). The Court should reject this argument.

Pursuant to 19 U.S.C. § 1673d(a)(3), Commerce shall determine that critical circumstances exist if:

> (A)(i) there is a history of dumping and material injury by reason of dumped imports in the United States or elsewhere of the subject merchandise, or
>
> (ii) the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling subject merchandise at less than its fair value and that there would have been material injury by reason of such sales, and
>
> (B) there have been massive imports of subject merchandise over a relatively short period.

19 U.S.C. § 1673d(a)(3).

Commerce's practice is to consider margins of 25 percent or more for export prices sufficient to impute knowledge of sales at less-than-fair-value. PDM at 29; IDM at 4. Here, after applying total adverse facts available for Fuzhou Hengli, Fuzhou Hengli's dumping margin is 515.40 percent. 90 Fed. Reg. at 8,271. This rate is greater than 25 percent, sufficient to impute knowledge of dumping, and Commerce therefore reasonably made the adverse inference that Fuzhou Hengli dumped "massive imports" over a "relatively short period," in accordance with 19 U.S.C. § 1673d(a)(3). IDM at 5.

Fuzhou Hengli does not challenge Commerce practice of using a threshold to impute knowledge of dumping. Rather, Fuzhou Hengli merely relies on its arguments that Commerce's application of AFA was unlawful. *See* Fuzhou Hengli Br. at 45-47. As discussed above, these arguments are without merit, and this Court should therefore affirm Commerce's critical circumstances finding.

**IV.    Commerce's Determination Not To Address The Surrogate Value Used For Paperboard Is Supported By Substantial Evidence And In Accordance With Law**

The use of total adverse facts available with respect to a respondent necessitates that Commerce need not consider Fuzhou Hengli's remaining arguments.  Here, Commerce applied the highest transaction-specific margin to Fuzhou Hengli, as a result of its withholding of information, failure to provide information in the form and manner requested, significant impeding of the proceeding, and failure cooperate to the best of its ability to comply with Commerce's request for information.  19 U.S.C. § 1677e(a)(2)(A), (B) and (C); *see also Deacero S.A.P.I. de C.V. v. United States*, 353 F. Supp. 3d 1303, 1313 (Ct. Int'l Trade 2018) (where this Court sustains Commerce's arguments that they need not consider plaintiff's remaining challenges considering its decision to apply total AFA).

Moreover, Fuzhou Hengli does not contest the rate that Commerce chose in this proceeding- the highest transaction-specific margin.  Rather, Fuzhou Hengli makes arguments on the merits of Commerce's input paperboard determination.  Here, because Commerce appropriately applied total adverse facts available to Fuzhou Hengli, it was not required to consider Fuzhou Hengli's arguments regarding the paperboard input surrogate values because doing so would have no bearing on the rate applied to Fuzhou Hengli.  If the Court finds that Commerce's application of total AFA to Fuzhou Hengli was appropriate, it does not need to entertain Fuzhou Hengli's arguments regarding its paperboard input surrogate values.  And if this Court were to find Commerce's application of total AFA was inappropriate, then Commerce should have the opportunity to consider the surrogate value determination in the first instance.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Fuzhou Hengli's motion for judgment on the agency record and sustain Commerce's Final Determination in its entirety.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL
Heather Holman
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for
Trade Enforcement Compliance

/s/ Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0315
Email: Collin.T.Mathias@usdoj.gov

September 30, 2025

*Attorneys for Defendant United States*

25