**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| FUZHOU HENGLI PAPER CO., LTD., <br><br>         Plaintiff, <br><br>    v. <br><br> UNITED STATES, <br><br>         Defendant, <br><br>    and <br><br> AMERICAN PAPER PLATE COALITION, <br><br>      Defendant-Intervenor. | Court No. 25-00064 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**
**ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Gene Degnan
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Jordan L. Fleischer
Edward J. Thomas III
Nicholas C. Duffey
Jenny (Shiyu) Liang

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4107

*Counsel to Plaintiff Fuzhou Hengli Paper Co., Ltd.*

November 17, 2025

## TABLE OF CONTENTS

I.    ARGUMENT ........................................................................................... 2

    A.    Commerce's Application of Facts Available to Fuzhou Hengli is Contrary to Law and Unsupported by Record Evidence. ...................................... 2

        i.    Commerce's Claim that it Provided Notice is Squarely Contradicted by the Record Evidence and Established Case Law. ........................... 2

        ii.   Commerce Was on Notice of Any Alleged Deficiency as Fuzhou Hengli's Reporting Methodology Was Obvious. .................................. 9

        iii.  Conclusion ....................................................................................... 13

    B.    Commerce's Application of Adverse Facts Available to Fuzhou Hengli Is Unlawful and Overly Punitive Because Fuzhou Hengli Acted to the Best of Its Ability to Comply and Its FOP Reporting Was Reasonable, Accurate and in Compliance with Commerce's Practice. ........................................... 14

        i.    Fuzhou Hengli's FOP Reporting Was in Compliance with Commerce's Practice. ..................................................................... 17

        ii.   Fuzhou Hengli's Reporting Was Accurate. ........................................ 18

        iii.  Commerce's Application of AFA is Unlawful, Unfair, and is the Unjustifiable Result of its Focus on Mere Form over Substance. ...... 19

        iv.   Conclusion ....................................................................................... 22

    C.    Surrogate Value and Critical Circumstances ............................................ 22

II.   CONCLUSION AND RELIEF REQUESTED ........................................... 23

CERTIFICATE OF COMPLIANCE .................................................................. 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States*,
   776 F. Supp. 3d 1290 (Ct. Int'l Trade 2025) ............................................................9

*Borden, Inc. v. United States*,
   22 CIT 233, 4 F. Supp. 2d 1221, SLIP OP. 98-36 (1998) .....................................16

*Bowe-Passat v. United States*,
   17 C.I.T. 335 (1993) ........................................................................................11, 12

*Dalian Meisen Woodworking Co. v. United States*,
   2023 WL 3058783 (CIT Apr. 24, 2023) ................................................................20

*Dongtai Peak Honey Indus. v. United States*,
   777 F.3d 1343 ........................................................................................................20

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012)..........................................................................8, 15

*F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*,
   216 F.3d 1027 (Fed. Cir. 2000)..............................................................................15

*Gallant Ocean (Thailand) Co. v. United States*,
   602 F.3d 1319 (Fed. Cir. 2010)..............................................................................15

*Guizhou Tyre Co. v. United States*,
   523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021) .........................................................14

*Husteel Co. v. United States*,
   98 F. Supp. 3d 1315 (Ct. Intl Trade 2015).............................................................15

*Hyundai Steel Co. v. United States*,
   518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021) ...................................................6, 7, 9

*Maverick Tube Corp. v. United States*,
   857 F.3d 1353 (Fed. Cir. 2017)........................................................................6, 8, 20

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003)..........................................................................14, 15

*NSK Ltd. v. United States*,
   481 F.3d 1355 (Fed. Cir. 2007)................................................................................6

*Oman Fasteners LLC v. United States*,
   125 F.4th 1068 (Fed. Cir. 2025) ...................................................................21

*Papierfabrik August Koehler SE v. United States*,
   843 F.3d 1373 (Fed. Cir. 2016)....................................................................14

*Reiner Brach GmbH & Co.KG v. United States*,
   206 F. Supp. 2d 1,323 (Ct. Int'l Trade 2002) ..................................10, 11

*Saha Thai Steel Pipe Public Co. Ltd. v. United States*,
   663 F. Supp. 3d 1356 (Ct. Int'l Trade 2023) ...........................................8

*Steel Auth. of India, Ltd. v. United States*,
   25 CIT 482 F. Supp. 2d 921, SLIP OP. 2001-60 (2001) ........................16

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
   298 F.3d 1330 (Fed. Cir. 2002)....................................................................14

*Ta Chen Stainless Steel Pipe, Ltd. v. United States*,
   23 C.I.T. 804 (1999) .............................................................................11, 12

*Tau-Ken Temir LLP v. United States*,
   147 F.4th 1363 (Fed. Cir. 2025) ...........................................................20, 21

*Xi'an Metals & Minerals Import Export Co., Ltd. v. United States*,
   520 F. Supp.3d 1,314 (Ct. Int'l Trade 2021), aff'd, 50 F. 4th 98 (Fed. Cir.
   2022) ...............................................................................................................7, 20

*Xi'an Metals, i.e., Mukand Ltd. v. United States*,
   767 F. 3d 1,300 (Fed. Cir. 2014).............................................................7, 20

**Statutes**

19 U.S.C. § 1677e(b)(1).................................................................................14

19 U.S.C. § 1677m(d).......................................................................2, 6, 9, 10

**Other Authorities**

*Thermoformed Molded Fiber Products from the Socialist Republic of Vietnam:*
   *Preliminary Affirmative Determination of Sales at Less Than Fair Value,*
   *Postponement of Final Determination and Extension of Provisional Measures,*
   90 Fed. Reg. 20,153 (Dep't of Commerce May 12, 2025) ....................17

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| FUZHOU HENGLI PAPER CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN PAPER PLATE COALITION, <br><br> Defendant-Intervenor. | Court No. 25-00064 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**
**ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to U.S. Court of International Trade ("CIT") Rule 56.2, Plaintiff Fuzhou Hengli Paper Co., Ltd. ("Fuzhou Hengli" or "Plaintiff") hereby replies to the response briefs filed by Defendant, the Unites States ("Defendant" or "Commerce"), and Defendant-Intervenor, the American Paper Plate Coalition ("Def-Intervenor" or "Petitioner"). Def.'s Response Brief, *Fuzhou Hengli Paper Co., Ltd. v. United States*, No. 25-00064 (Ct. Int'l Trade Sept. 30, 2025), ECF No. 44 ("Def. Br."); Def.-Intervenor's Response Brief, *Fuzhou Hengli Paper Co., Ltd. v. United States*, No. 25-00064 (Ct. Int'l Trade Sept. 30, 2025), ECF No. 42 ("Def-Intervenor Br."). For the following reasons, Defendant and Defendant-Intervenor's arguments should be rejected.

1

I.    **ARGUMENT**

A.    **Commerce's Application of Facts Available to Fuzhou Hengli is Contrary to Law and Unsupported by Record Evidence.**

The crux of this litigation is whether Defendant, the Department of Commerce ("Commerce"), acted contrary to the law by applying facts available ("FA") to Fuzhou Hengli without complying with its legal obligation under 19 U.S.C. § 1677m(d).  This law demands that "{b}efore the Department applies facts otherwise available, it must inform the respondent about the nature of the deficiency and allow the respondent an opportunity to explain or to remedy the deficiency to the extent practicable." *Id*.  Defendant asserts in its response brief two contradictory arguments that it complied with 19 U.S.C. § 1677m(d):  (1) that it provided the notice of deficiency required under the statute; and (2) that Commerce could not have known of the deficiency until verification and therefore could not provide notice.  Defendant also continues to assert, contrary to the record evidence, that Fuzhou Hengli reported its factors of production ("FOPs") incorrectly in its response to the initial questionnaire and that it failed to comply with Commerce's requests for information.  Def. Br. at 8-22.  This mosaic of explanations mischaracterizes the record evidence and shows the disingenuousness of Defendant's position.

i.    **Commerce's Claim that it Provided Notice is Squarely Contradicted by the Record Evidence and Established Case Law.**

Defendant's claim that it notified Fuzhou Hengli of the alleged reporting deficiency for which it applied FA, by means of issuing a supplemental questionnaire, is a blatant mischaracterization of the record and contrary to established case law of this court.

Throughout the course of the investigation, Commerce did not once inform Fuzhou Hengli of any alleged deficiency in its paperboard input reporting related to the "commingling" of paperboard inputs -*i.e.*, that Fuzhou Hengli grouped multiple "basis-weights" of the paperboard input folding box board ("FBB") together, rather than reporting each FBB basis-

weight as a separate and distinct FOP.  The single supplemental questionnaire in no way satisfies

the notice requirement, either as commonly understood during ordinary communication or

defined in established case law, whereby Fuzhou Hengli could understand that its reporting had

this alleged deficiency.

In its Response Brief, however, Defendant attempts to conflate two different aspects of

FOP reporting in order to make it appear that it provided notice regarding the "commingling" of

the FBB inputs.  Def. Br. at 10-15.  It is important to understand the differences between these

two aspects, and accordingly, the difference between what Commerce actually requested from

Fuzhou Hengli and what Commerce is asserting in its Response Brief that it requested.

By way of explanation – FOPs are reported as a ratio, and thus consist of two aspects –

the numerator and denominator.  The denominator is the unit of the reported merchandise, which

can be a particular weight – kilogram ("kg"), metric ton, *etc.*, or a single "piece" or any other

unit in which the merchandise is sold (one kit, package, etc.).  *See* Letter from Lana Nigro,

Program Manager, AD/CVD Operations, Office VII, to Donald B. Cameron, Morris, Manning &

Martin, LLP, "Less-Than-Fair-Value Investigation of Certain Paper Plates from China: Request

for Information" at D-1 to D-3 (Dep't Commerce Apr. 24, 2024) ("Initial Questionnaire"), PR

Doc. 146.  The numerator is the quantity of each factor that is used in the production of the

quantity in the denominator.  The numerator is almost always a unit of weight.

Fuzhou Hengli notes that Defendant's example of FOP reporting, given on page 11 of its

Response Brief, is misleading in the context of this investigation.  Def. Br. at 11.  CONNUM A

and CONNUM B, in their example, might report very different quantities of steel inputs if the

product under investigation used steel parts or components, *e.g*., like an engine or a washing

machine.  However, for homogenous products, *e.g*., steel pipe, steel beams, or steel nails, the

steel FOP will always be virtually if not literally identical on a per-kg basis if the production processes are the same for all CONNUMs. This is also the case with paper plates – they are all produced identically using only paperboard and varnish. After, some might have ink designs printed on them, but this has no effect on the quantity of paperboard input on a per-kg reporting basis.

In its initial questionnaire response, Fuzhou Hengli reported its FOPs in kg (numerator) per "package" (denominator, and the unit in which the products were sold). This reporting methodology is completely in compliance with the instructions in the Initial Questionnaire, as explained in Fuzhou Hengli's Rule 56.2 Brief. *See* Plaintiff Fuzhou Hengli's Brief In Support Of Its Motion For Judgment On The Agency Record at 5-6, *Fuzhou Hengli Paper Co., Ltd. v. United States*, Ct. No. 25-00064 (Ct. Int'l Trade Aug. 1, 2025) ("Fuzhou Hengli's 56.2 Br."), ECF No. 39.

In its sole supplemental questionnaire issued to Fuzhou Hengli, Commerce directed Fuzhou Hengli to change its reporting to a per-kg basis, *i.e.*, using kg as the denominator:

> 12.    Fuzhou Hongli reported certain factors of production on a per pack basis (see Exhibits D-6 and D-7). Please report all factor consumption usage rates on a per KG basis and revise the individual and combined FOP databases accordingly.

Letter from Lana Nigro, Program Manager, AD/CVD Operations, Office VII, to Fuzhou Hengli Paper Co., Ltd, c/o Eugene Degnan, Morris Manning & Martin, LLP, "Less-Than-Fair-Value Investigation of Certain Paper Plates from the People's Republic of China: Supplemental Questionnaire for Fuzhou Hengli Paper Co., Ltd." at 6 (Dep't Commerce Jul. 26, 2024) ("Supplemental Questionnaire"), PR Doc. 265; CR Doc. 143.

This request does not in any way address the numerator (or the alleged "commingling" issue) – it only concerns the denominator, *i.e.*, the type of unit used in the denominator.

Therefore, no notice was given to Fuzhou Hengli of any "deficiency" in the numerator, *i.e.*, the basis by which Commerce applied FA. Accordingly, the Court should not be misled that this question provided notice of the "commingling" issue.

Defendant's Response Brief attempts to further obfuscate this issue by implying that Commerce addressed the issue when it "asked {Fuzhou Hengli} to re-submit its FOP reporting on a per-unit <u>basis and to match product characteristics in a supplemental questionnaire</u>". Def. Br. at 12-13 (emphasis added). Here is the full request regarding "product characteristics":

13. Please add the individual product matching characteristics in the FOB database. Supplemental Questionnaire at 6.

Again, this request has no bearing on the issue of "commingling" in the numerator of the reported FOPs. In fact, the request does not address the reporting of the FOP itself, at all. This request simply asks for a change in the formatting of the database to add columns that explicitly identify each of the physical characteristics which comprise the CONNUM being reported. That is, it is simply a redundancy of the information incorporated into the CONNUM, but "spelled out," so to say, for easy reference. It adds no new information to the database. The Court should not be deceived into believing it has implications regarding the content of the numerator of the FOPs, or the substantive reporting of FOP figures at all.

As explained above, Defendant's Response Brief is a blatant mischaracterization of this issue. Questions 12 and 13, discussed above, are the sole bases upon which Commerce claims that it notified Fuzhou Hengli that it found its reporting of FBB (in the numerator of the FOP ratio) deficient. Def. Br. at 12-13. Neither question uses the term "basis-weight."[1] Commerce's supplemental questionnaire demonstratively did not, in any way, touch on the issue of

---

[1] Ironically, Defendant's Response Brief uses the term "basis weight" 25 times.

comingling of paperboard inputs of differing basis-weights.  Commerce's Supplemental
Questionnaire only directed Fuzhou Hengli to report on a different denominator basis, that of kgs
per-kg rather than kgs per-package, and to reformat its FOP database by adding columns that
identify physical characteristics that were already identified in each CONNUM.  Supplemental
Questionnaire at 6.

The cases cited by Commerce to support its contention that it notified Fuzhou Hengli of a
deficiency only prove the contrary.  In fact, they serve to bolster the fact that Commerce
provided no notification as required by 19 U.S.C. § 1677m(d).  Not only does this line of cases
clearly establish that FA or AFA is only warranted in the case of "repeated failures" after
Commerce has given multiple notices and opportunities for revision, it also outlines definitional
elements of "notice."  A supplemental questionnaire can only constitute a "notice" when it
"'specifically point{s} out and request{s} clarification of {the} deficient responses,' and
identifies the information needed to make the required showing."  *Hyundai Steel Co. v. United
States*, 518 F. Supp. 3d 1309, 1323, (Ct. Int'l Trade 2021) (alterations in original) (emphasis
added) (quoting *NSK Ltd. v. United States*, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007)); *see also
Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017) (holding that
Commerce satisfied its obligation under section 1677m(d) when the respondent "failed to
provide the information requested in Commerce's original questionnaire, and the supplemental
questionnaire notified {the respondent} of that defect").  This Court has also repeatedly held that
"{b}roadly drawn initial or supplemental questionnaires may not sufficiently place a respondent
on notice of the nature of the deficiency," and that "similarities in questions between the initial
and supplemental questionnaires alone do not serve as evidence that Commerce found that initial

questionnaire response deficient." *Hyundai Steel Co. v. United States*, 518 F. Supp. 3d at 1322 - 1323.

In *Xi'an Metals & Minerals Import Export Co., Ltd. v. United States*, 520 F. Supp.3d 1,314 (Ct. Int'l Trade 2021) ("*Xi'an Metals I*"), aff'd, 50 F. 4th 98 (Fed. Cir. 2022) ("*Xi'an Metals II*"), the courts only upheld Commerce's application of FA because the respondent had been on notice of Commerce's required reporting method since the end of the third administrative review, which Commerce emphasized again in the instant tenth administrative review at issue. Moreover, Commerce provided "multiple opportunities" for the respondent to comply and revise its mistakes, including by issuing one supplemental questionnaire where it "explicitly" asked the respondent why it cannot provide more specific CONNUM information. *Xi'an Metals I* at 1326; *Xi'an Metals II* at 103-104. Only as a result of the respondent's "repeated failures" to comply is the application of FA justified since the necessary information is not available on the record. *Xi'an Metals II* at 108.

The case relied on by *Xi'an Metals*, *i.e., Mukand Ltd. v. United States*, 767 F. 3d 1,300 (Fed. Cir. 2014) ("*Mukand*"), contains facts that differ even more drastically from the situation with Fuzhou Hengli. In *Mukand*, AFA is warranted when the respondent failed to provide necessary information after being requested on "five separate occasions." *Mukand Ltd.*, 767 F. 3d at 1307. There, Commerce issued four supplemental questionnaires in which it explained each time why it was unsatisfied with the respondent's response and reiterated the information requested. Moreover, Commerce even went so far as to warn that "the failure to provide the requested information may result in Commerce deciding to rely on facts available," and in one questionnaire, provided a "sample chart" for the respondent to complete and encouraged it to reach out if it needed assistance or further clarification. *Id.* at 1303-1306. As the respondent

failed to comply repeatedly despite being given multiple opportunities to do so, the court upheld Commerce's application of FA and AFA.

Commerce also cited to three other cases, respectively *Maverick Tube Corporation v. United States*, 857 F.3d 1353 (Fed. Cir. 2017), *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275-76 (Fed. Cir. 2012), and *Saha Thai Steel Pipe Public Co. Ltd. v. United States*, 663 F. Supp. 3d 1356, 1373-74 (Ct. Int'l Trade 2023) as support for its assertion that a supplemental questionnaire can be a deficiency notice. Def. Br. at 12. All of these cases are based on facts that differ significantly from this investigation on appeal – in fact, they outline the requirements for a supplemental questionnaire to constitute a "deficiency notice" and clearly show that Commerce's single supplemental questionnaire issued to Fuzhou Hengli in no way qualifies as one. In each of these three cases, Commerce explicitly pointed out in the questionnaires with what and why it was unsatisfied with the respondents' reporting and specifically requested revisions. Commerce in all three cases also made multiple requests and the respondents repeatedly failed to comply. *See Maverick Tube*, 857 F.3d at 1360; *Essar Steel Ltd.*, 678 F.3d at 1275-76; *Saha Thai Steel Pipe*, 663 F. Supp. at 1373-74. Most egregiously, in *Essar Steel Ltd.*, the respondents deliberately withheld the requested information and lied to Commerce twice and only complied after AFA was applied. *See Essar Steel Ltd.*, 678 F.3d at 1275-1276. This is the classic kind of gamesmanship behavior that the AFA law seeks to punish and preempt. Different from all the above cases, and as explained above, Commerce never even mentioned the alleged "commingling" deficiency in Fuzhou Hengli's reporting and thus never gave "notice" in the form of a supplemental questionnaire or otherwise. Without being given any notice or opportunity for remedy, Fuzhou Hengli did not "fail to comply" with Commerce's requests, let alone repeatedly. Thus, Commerce's FA application is unlawful and unwarranted here.

This Court found Commerce's application of FA unlawful in *Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States,* 776 F. Supp. 3d 1290 (Ct. Int'l Trade 2025), the very case cited by Commerce itself.  In that case, the Court ruled that Commerce failed to fulfill its notice obligations under § 1677m(d) because it "did not specifically point out and request clarification of the deficiency" and did not "identify the information needed to make the required showing" in either the initial or supplemental questionnaire issued to the Government of China. *Baroque Timber Industries (Zhongshan) Co., Ltd.*, 776 F. Supp 3d at 1309 (quoting *Hyundai Steel Co. v. United States*, 518 F. Supp. 3d at 1323).  In the supplemental questionnaire, Commerce only vaguely referenced "certain areas" where additional information is required but "did not elaborate further as to what these certain areas were." *Id.*  Demonstrably, this is indeed a higher level of notice given than the Supplemental Questionnaire issued to Fuzhou Hengli where no areas of deficiency in the numerator of the FOP were mentioned at all.  Therefore, Commerce's first attempt at arguing that it complied with 19 U.S.C. § 1677m(d) by notifying Fuzhou Hengli of the alleged deficiency through the single Supplemental Questionnaire is clearly not supported by record evidence and not in accordance with the law.

### ii.    Commerce Was on Notice of Any Alleged Deficiency as Fuzhou Hengli's Reporting Methodology Was Obvious.

Defendant's alternative and contradictory argument, that it could not notify Fuzhou Hengli of this alleged reporting deficiency because it was not aware of it in time to do so, is disingenuous and can be readily refuted by facts on the record.  Defendant argues that it was only at verification that:

"Commerce learned that, in the paper plate production process, a paper plate with a given basis weight can only be made with a paperboard input with that same basis weight (*i.e.* if

a paper plate has a basis weight of 270 g/m2, it can only be made from a paperboard input with a basis weight of 270 g/m2)."

Def. Br. at 13-14.

This assertion simply strains credulity.  Fuzhou Hengli reported that it produced different basis-weight plates.  *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Sections C and D Initial Questionnaire Responses" at Exhibit D-1, Exhibit D-6 (Jun. 18, 2024) ("Fuzhou Hengli's Sec. C-D IQR"), PR Doc. 210; CR Doc. 114-117.  It is common sense that different weight basis paper plates would necessarily be made with different weight-basis paperboard.  Also, the fact that this assertion contradicts Commerce's alternative explanation that it did direct Fuzhou Hengli to report FBB inputs by basis-weight shows that it is disingenuous.  Defendant's implication that this issue only came to light at verification is spurious.

Petitioner's reliance on *Reiner Brach GmbH & Co.KG v. United States*, 206 F. Supp. 2d 1,323 (Ct. Int'l Trade 2002) to argue that the notification requirement under 19 U.S.C. § 1677m(d) applies only when Commerce "had notice or reason to believe that a deficiency existed" is misplaced.  Def-Intervenor Br. at 19-20.  The facts and circumstances in that case differ significantly from the situation here.  In *Reiner Brach*, both the initial and the supplemental questionnaires are clear as to the information requested, and the supplemental questionnaire explicitly requested clarifications for the specific discrepancies.  The initial questionnaire asked for information for "all sales of foreign like product" and defined "foreign like products as identical or similar merchandise."  Commerce further indicated that the reason it asked for this information is that it would determine for itself which sales are appropriate for comparison.  *Reiner Brach*, 206 F. Supp. 2d at 1326.  After the respondent failed to provide the

10

information, Commerce issued a supplemental questionnaire specifically requesting: "1) clarification of discrepancies between the total quantity of home market sales reported in the responses and the quantity indicated by the sales data in the spreadsheets; and 2) clarification as to why various reported costs were the same for both periods of review." *Id.* In response to the supplemental questionnaire, the respondent again failed to submit all of the home market sales data as requested. In fact, the answers given by the respondent were so vague that Commerce had no notice or reason to believe a deficiency existed until at verification. Only at verification was Commerce able to find out that the respondent could in fact distinguish costs for home market sales of identical merchandise but failed to do so despite requests for "actual" costs in the supplemental questionnaire. At verification, Commerce rejected the respondent's submission of a revised database regarding home market sales of identical merchandise which it claimed it had previously "inadvertently omitted" and subsequently applied AFA. *Id.* at 1333. The Court found both of Commerce's determinations reasonable on several bases, most prominently the clarity of Commerce's questionnaires and its inability to discern the omission of information until verification. *Id.* at 1334.

This is clearly not the case here. First, Commerce never requested that Fuzhou Hengli break out FBB by basis-weight, and therefore never requested clarification or revision of any deficiency related to this issue in its questionnaires. Second, Fuzhou Hengli never withheld any information from Commerce and its reporting was transparent throughout the course of the investigation. There are no aspects of its reporting that Commerce was not aware of or could only "find out" at verification.

The Court in *Reiner Brach* distinguishes the facts in that case with two other cases, both of which resemble Fuzhou Hengli's case here. Similar to both *Bowe-Passat v. United States*, 17

C.I.T. 335 (1993) and *Ta Chen Stainless Steel Pipe, Ltd. v. United States,* 23 C.I.T. 804 (1999),

the information alleged missing by Commerce was never specifically requested in the original or

supplemental questionnaires.  *See Ta Chen*, 23 C.I.T. at 818-19; *see also Bowe-Passat* 17 C.I.T

at 343.  In *Bowe-Passat*, Commerce issued a general initial questionnaire and even a brief

deficiency letter, without, however, specifying the exact deficiencies.  It then penalized the

respondent for deficiencies not specified in the letter.  The court struck down this "predatory

gotcha" by inferring that Commerce was apparently aware of the deficiency but failed to address

it or inform that further information is required.  *Id.*  Similarly, and in fact more obviously here,

Commerce was aware that Fuzhou Hengli reported only one FOP for paperboards during this

investigation but failed to fulfill its statutory notice requirement by specifying that the different

basis-weights need to be reported separately in any questionnaires.  Its application of FA to

Fuzhou Hengli is thus unlawful and unsupported by record evidence.

It is also obvious from the record that, if simply given notice and directed by Commerce

to report in the specific manner it now claims was required, Fuzhou Hengli would have

complied, in the same way it has collaborated throughout the entirety of the investigation.  In

fact, Fuzhou Hengli was able to provide in its Rebuttal Brief, based on verified evidence already

on the record (*i.e.*, in Exhibit D-6 of its Section D response, albeit slightly modified by

Verification Minor Correction #1), the inputs in the manner that Commerce demanded, *post-ho*c.

*See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Paper Plates

from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Rebuttal Brief" at

Attachment 1 (Jan. 8, 2025) ("Fuzhou Hengli's Rebuttal Brief"), PR Doc. 346; CR Doc. 318.  In

its Rebuttal Brief, Fuzhou Hengli submitted an exhibit based on record evidence that

demonstrates that only miniscule differences exist between its reporting method and the method

Commerce required, *post-hoc*. *Id.* That Fuzhou Hengli was not able to provide the "requested" inputs "*a priori*" is an unfortunate result of Commerce's negligence to provide any notice or opportunity for remedy.

Moreover, in what is an accurate microcosm of this investigation, it is quite clear that Commerce never examined Fuzhou Hengli's Rebuttal Brief closely enough to know that this exhibit was submitted but lost by Commerce. *See* Def. Br. at 16. As explained in its motion to supplement the record before this Court, Fuzhou Hengli properly submitted the said exhibit with its Rebuttal Brief by following ACCESS instructions for datafile submissions, and received confirmation letters as proof of the success of the submission. *See* Plaintiff Fuzhou Hengli Paper Co., Ltd.'s Motion to Supplement the Record, *Fuzhou Hengli Paper Co., Ltd. v. United States*, No. 25-00064 (Ct. Int'l Trade Oct. 1, 2025) ("Hengli's Motion to Supplement"), ECF No. 47, 48. Due to errors internal to Commerce, Commerce lost the datafile. Commerce should have discovered this mistake if it had in fact reviewed Fuzhou Hengli's Rebuttal Brief, but it never did.

In this litigation, and in keeping with its stance in the underlying investigation, Commerce now requests that this information it overlooked be ignored by the Court, and further refused to consent to Fuzhou Hengli's motion to add the properly filed exhibit to the record. *See* Def. Br. at 16. Commerce's initial negligence in not reviewing the record information and subsequent excuses to shift the blame to Fuzhou Hengli further reveal the hypocrisy of its assertion that Fuzhou Hengli was not cooperative, rather than that Commerce was negligent.

### iii. Conclusion

In short, Commerce failed in its statutory obligation to give notice to Fuzhou Hengli of any alleged deficiencies and provide an opportunity to remedy them. The record and case law show that Commerce did not provide such notice, either in its single Supplemental Questionnaire

or in any other form.  The record is also clear that Commerce was on notice of this issue because Fuzhou Hengli's reporting methodology was transparent from the start and that its different basis-weight paper plates could only have been produced with different basis-weight paperboard inputs.  Commerce's two self-contradictory assertions to the contrary are disingenuous and only reveal its gamesmanship in unduly and unlawfully punishing Fuzhou Hengli for its own mistakes.

> **B.** **Commerce's Application of Adverse Facts Available to Fuzhou Hengli Is Unlawful and Overly Punitive Because Fuzhou Hengli Acted to the Best of Its Ability to Comply and Its FOP Reporting Was Reasonable, Accurate and in Compliance with Commerce's Practice.**

Commerce's application of AFA to Fuzhou Hengli is overly punitive, unlawful, and unfair, as Fuzhou Hengli's FOP reporting was reasonable, accurate, and in compliance with Commerce's practice.  Commerce "may" apply AFA when an "interested party has failed to cooperate by not acting to the best of its ability." 19 U.S.C. § 1677e(b)(1).  A respondent's failure to cooperate to the "best of its ability" is determined by assessing whether it has put forth its "maximum effort to provide full and complete answers to all inquiries."  *Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1382 (Fed. Cir. 2003).  However, Commerce's discretion as to the application of AFA is "not unbounded."  *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1380 (Fed. Cir. 2016); *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339 (Fed. Cir. 2002).  Instead, its decisions must be in accordance with the laws and supported by substantial evidence.  *See., e.g, Guizhou Tyre Co. v. United States*, 523 F. Supp. 3d 1312, 1333 (Ct. Int'l Trade 2021).  The statute does not allow Commerce to wantonly apply AFA to respondents whenever an omission or mistake is made, regardless of the materiality of the issue and graveness of the situation.  The CIT has determined that the "best of ability"

standard does not require perfection. *See Husteel Co. v. United States,* 98 F. Supp. 3d 1315 (Ct. Intl Trade 2015), quoting *Nippon Steel*, 337 F.3d at 1382.

Courts have held Commerce's decision to apply AFA unlawful when it is overly punitive. *See Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1324 (Fed. Cir. 2010) (finding an unreasonably high dumping margin that is "more than ten times higher than the average dumping margin for cooperating respondents" "punitive, aberrational, or uncorroborated."). Moreover, the CAFC has held that, in the exercise of {Commerce's} discretion, AFA is intended to be remedial— "the purpose of the adverse facts statute is 'to provide respondents with an incentive to cooperate'…, not to impose punitive damages." *Essar Steel*, 678 F.3d at 1276, quoting *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). As discussed above, a line of cases have also established that the application of AFA without giving the respondent another opportunity to remedy any deficiency is unduly punitive and unlawful.

In the investigation under appeal, Fuzhou Hengli's FOP reporting was reasonable, accurate, and in compliance with Commerce's practice. Moreover, Fuzhou Hengli acted to the best of its ability to comply with any and all of Commerce's requests for information. While Commerce has the ability under the law to request additional information, as discussed above, it did not do so regarding the FOP reporting upon which it based its application of AFA. In the absence of any notice or opportunity for remedy, it is overly punitive and unlawful to apply AFA to Fuzhou Hengli.

Commerce's assertion that it reasonably applied AFA to Fuzhou Hengli based upon its determination that "Fuzhou Hengli possessed CONNUM-specific FOP reporting data and did not report its FOPs in the manner requested" is not in accordance with the law or supported by the

15

record evidence. Def. Br. at 18. It is contrary to law because AFA findings are distinct from FA findings, and Commerce may not use its FA finding as the sole justification for use of an adverse inference. *See Steel Auth. of India, Ltd. v. United States,* 25 CIT 482, 488, 149 F. Supp. 2d 921, 930, SLIP OP. 2001-60 (2001) (*citing Borden, Inc. v. United States*, 22 CIT 233, 261, 4 F. Supp. 2d 1221, 1246, SLIP OP. 98-36 (1998) ("In making its determination that an interested party did not act 'to the best of its ability,' the Department cannot merely recite the relevant standard or repeat its facts available finding. Rather, in order to satisfy its statutory obligations, the Department must be explicit in its reason for applying adverse inferences."). This, however, is precisely what Commerce has done. The basis for the application of facts available is the "failure to appropriately report its FOPs amounts. *See* Def. Br. at 10.

Commerce's determination is not supported by the record because Fuzhou Hengli did report "in the manner requested." Its reporting was in full compliance with the initial questionnaire, and it fully complied when Commerce requested additional information in the supplemental questionnaire. As discussed *supra*, Commerce never requested that Fuzhou Hengli break out its FOP of FBB by basis-weight. Moreover, Fuzhou Hengli correctly reported its FOPs in a CONNUM-specific and accurate manner. If Commerce were to request a different or allegedly more CONNUM-specific reporting methodology (despite there being no increase in accuracy), it was obligated to notify Fuzhou Hengli and request as such, but failed to do so in accordance with the statute. It is unlawful for Commerce to simply assume that the information it wants does not exist without requesting it, and then apply AFA when it discovers that it does exist.

16

i.    **Fuzhou Hengli's FOP Reporting Was in Compliance with Commerce's Practice.**

Defendant's attempts to paint Fuzhou Hengli as non-cooperative by maligning Fuzhou Hengli's reporting as deficient on several bases, such as that it was not initially on a per-kg basis, or that it was not CONNUM-specific, are unsupported.  Both of these issues were addressed in Fuzhou Hengli's Rule 56.2 Brief.  *See* Fuzhou Hengli's 56.2 Brief at 14-20.  Defendant, however, continues to merely repeat the same untruths from the final determination to support its positions without addressing, let alone rebutting, Fuzhou Hengli's correct assertions on these issues.

Defendant's assertion that Fuzhou Hengli initially failed to report correctly because it did not report on a per-kg basis has already been rebutted by Fuzhou Hengli in its 56.2 Brief, and discussed *supra*.  *See id*.  Defendant's Response Brief simply ignores these arguments and repeats the same mischaracterizations.  In fact, in cases where the product is sold per-piece or package, it is quite common and often preferred to report FOPs based on the same unit in which it is sold.  *See* Fuzhou Hengli's 56.2 Brief at 17-18.  For instance, in another antidumping proceeding concerning paper products, *Less-than-Fair-Value of Thermoformed Molded Fiber Products from the Socialist Republic of Vietnam*, Commerce took no issue with the respondent's FOP reporting on a per-1000 piece basis.  *See Thermoformed Molded Fiber Products from the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Extension of Provisional Measures,* 90 Fed. Reg. 20,153, (Dep't of Commerce May 12, 2025), and accompanying Preliminary Decision Memorandum.  Of course, when Commerce wanted the FOPs reported based on a per-kg basis and apprised Fuzhou Hengli of this, Fuzhou Hengli immediately complied.  This does not, however, indicate that the initial reporting was deficient.

Defendant's repeated allegations that Fuzhou Hengli's FOP reporting was not CONNUM-specific is also disingenuous. Defendant takes issue with one single aspect of Fuzhou Hengli's FOP reporting – that it grouped different weights of FBB together. *See* Def. Br. at 12-13. This one single difference does not render Fuzhou Hengli's reporting as not CONNUM-specific.

Defendant's continued assertions that Fuzhou Hengli failed to comply because it "commingled" different paperboard FOPs when reporting its paperboard input are misleading. *See id*. The record is clear that the Initial Questionnaire does not request that paperboard inputs be reported broken out by "basis-weight." It requests that the respondent report the "raw material used." IQR at D-6. There is no dispute that Fuzhou Hengli reported the "raw material used" - folding box board ("FBB"). Therefore, Fuzhou Hengli reported its paperboard input correctly – as FBB. There was no indication that FBB must be broken out by basis-weight.

Although Commerce attempts to portray this as unacceptable, grouping together raw materials that differ only by insignificant characteristics, such as weight, color, size, is a common reporting methodology. Commerce takes no exception, *e.g.*, that Fuzhou Hengli reported all colors of ink under one single FOP. The reason is clear— the different colors are not differently valued, so it makes no sense to break them out. The same applies to FBB. It is valued with one single surrogate value ("SV"), just like the inks. Obviously, basis-weight is not a significant factor of FBB value, as the SV itself covers all the different weights at issue.

### ii. Fuzhou Hengli's Reporting Was Accurate.

Commerce's continued assertions that Fuzhou Hengli's FOP reporting results were not accurate, or would result in inaccurate margins, have been previously refuted. Def. Br. at 15. As demonstrated in Fuzhou Hengli's 56.2 Brief, and in its Rebuttal Brief in the investigation, this is

simply untrue. *See* Fuzhou Hengli's 56.2 Brief at 18-20; *see* Fuzhou Hengli's Rebuttal Brief at 29-37. This issue is also thoroughly discussed in Fuzhou Hengli's 56.2 Brief, but largely ignored and not rebutted by Commerce in the Response Brief. Fuzhou Hengli will not repeat those unrebutted arguments here, but addresses one of the mischaracterizations by Commerce.

Fuzhou Hengli notes that the reason it asserts that its reporting methodology was "accurate" was not because that "…it disagreed with what Commerce asked for and offered a reasonable substitute," as mischaracterized by Defendant. Def. Br. at 16. That is clearly not how this issue progressed in the investigation. Rather, Fuzhou Hengli first offered this methodology, and Commerce never asked for a different methodology, so any "substitute" never existed.

Fuzhou Hengli's reason for demonstrating that its methodology was accurate is twofold. First, to indicate that its reporting method was a reasonable one to offer initially, because it was accurate. Second, to show that Commerce's arguments that Fuzhou Hengli's methodology would ultimately lead to an inaccurate margin or there is necessary information missing from the record are spurious. *See* Fuzhou Hengli's 56.2 Brief at 18-20.

Commerce has the prerogative to request that Fuzhou Hengli provide its data in a different manner or methodology. Had Commerce requested this, Fuzhou Hengli would have complied to the best of its ability. However, this does not change the fact that Fuzhou Hengli's proposed methodology was reasonable and accurate.

### iii. Commerce's Application of AFA is Unlawful, Unfair, and is the Unjustifiable Result of its Focus on Mere Form over Substance.

Commerce's application of AFA to Fuzhou Hengli is overly punitive, based on an unjustifiable focus on form over substance, and violates the remedial goal of the AFA statute and anti-dumping laws. The facts here stand in stark contrast with the line of cases discussed *supra*,

where the application of AFA is justified after Commerce gave multiple notices and the respondents repeatedly failed to comply.  Therefore, it is unlawful for Commerce to apply AFA to Fuzhou Hengli given that it has acted to the best of its ability to comply and that Commerce did not give any notice of the alleged deficiency or any opportunities for remedy.  Moreover, it is inequitable to assign a total AFA margin of 515.40 percent to Fuzhou Hengli when its margin based on verified record evidence is zero, as calculated at the *Preliminary Determination*.  This is despite that the record evidence is clear that Commerce's preferred (though never requested) reporting methodology would result in an even lower margin calculation.  *See* Fuzhou Hengli's Rebuttal Brief at Attachment 1.

The very cases cited by Defendant also clearly demonstrate that it is never Commerce's practice to merely focus on form over substance and unreasonably punish respondents who cooperate in good faith.  Such is the case, for instance, in *Xi'an Metals I*, where even the questionnaires allow for "alternative methodology" that would result in accurate reporting of the cost of production.  *See Xi'an Metals I*, 520 F. Supp.3d at 1326; *see also Maverick Tube* 857 F.3d 1361 (upholding the AFA application as Borusan could have suggested an alternative for the requested information but instead did not provide any information at all).  Commerce quoted *Dalian Meisen Woodworking* for its proposition that "a party cannot unilaterally decide that it will provide something different" from exactly what Commerce requested.  *See Dalian Meisen Woodworking Co. v. United States*, Ct. No. 20-00109, 2023 WL 3058783 (Ct. Int'l Trade Apr. 24, 2023) at *3.  However, that quote is largely taken out of context.  The Court in that case did allow alternative forms in which the party is able to submit the information. *See Id.*

Defendant relied on *dicta* from a case cited in *Tau-Ken Temir LLP v. United States,* 147 F.4th 1363 (Fed. Cir. 2025), namely *Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343,

without proper citation, albeit asserting that "parties cannot unilaterally decide whether and when Commerce actually needs the information it requested." *See Tau-Ken Temir*, 147 F.4th at *25. However, *Tau-Ken Temir* only serves to prove the unreasonableness of Commerce's application of AFA in the instant case.  In that case, the Court held Commerce's rejection of the respondent's untimely filed submission to be unwarranted and an abuse of discretion when the submission was only slightly more than one hour late.  *See Tau-Ken Temir* at *5.  The Court weighed several factors in its considerations, including among others, that the submission contains vital information to determine an accurate margin; that the respondent showed reasonable efforts to cooperate throughout verification; that accepting the information posed no undue burden to Commerce; and that there were no finality issues at stake by accepting the late submitted information.  *See id.* at *19-30.  This further proves the long-established court precedents and Commerce's practice to exercise discretion in weighing different factors and taking into account equity concerns when evaluating AFA applications.  This discretion is clearly abused if its exercise rests on a clear disregard of record evidence and error in judgment in the consideration of relevant factors.  *See Oman Fasteners LLC v. United States*, 125 F.4th 1068, 1084 (Fed. Cir. 2025).

Thus, it is Commerce's common practice to accept alternative methods of reporting as long as the essential information is provided and the goal of the reporting is reached.  As demonstrated by Fuzhou Hengli in the attachment submitted along with its rebuttal brief in the investigation, its own reporting method only results in negligible differences from the method required by Commerce *post-hoc*.  *See id.*  Contrary to Defendant's baseless argument, the Court should not ignore this evidence that was properly filed and should order Defendant to supplement the record with this information.  It is therefore highly unfair and contrary to the

21

remedial spirit of the AFA law and anti-dumping statute to punish Fuzhou Hengli for providing essentially the same information that Commerce demanded, *post hoc*, in a slightly different form.

### iv.    Conclusion

Fuzhou Hengli's FOP reporting was reasonable, CONNUM-specific, accurate and in compliance with Commerce's practice, and it has acted to the best of its ability to cooperate. Commerce's application of a total AFA margin of 540.14 percent, based on a technicality that demonstrably has virtually no effect on the margin and where the record evidence shows that the respondent has a zero percent margin, is draconian. To put it bluntly, Commerce is playing "predatory gotcha" in its desperate attempt to keep Fuzhou Hengli under the Order. On this additional basis, not only is Commerce's application of AFA contrary to law and unsupported by record evidence, it is also highly inequitable.

### C.    Surrogate Value and Critical Circumstances

As there is no basis to apply AFA, we ask that the Court direct Commerce to calculate a margin for Fuzhou Hengli based on the verified record evidence in the investigation. We also ask that the Court therefore direct Commerce to reconsider its automatic imputation of importer knowledge of dumping and the final critical circumstances determination with respect to Fuzhou Hengli, and that Commerce evaluate Fuzhou Hengli's SV arguments regarding Fuzhou Hengli's paperboard input of FBB.

## II.    <u>CONCLUSION AND RELIEF REQUESTED</u>

For the foregoing reasons, Fuzhou Hengli respectfully requests that the Court grant its

motion for judgment on the agency record and reject the arguments of Defendant and Defendant-

Intervenor.

Respectfully submitted,

/s/ Gene Degnan
Gene Degnan
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Jordan L. Fleischer
Edward J. Thomas III
Nicholas C. Duffey
Jenny (Shiyu) Liang

**MORRIS, MANNING & MARTIN LLP**
1333 New Hampshire Avenue, N.W.,
Suite 800
Washington, D.C. 20036

*Counsel to Plaintiff Fuzhou Hengli Paper Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 6,602 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Gene Degnan
Gene Degnan

Dated:  November 17, 2025