**Slip Op. 26-59**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **FUZHOU HENGLI PAPER CO., LTD.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant,**<br><br>**and**<br><br>**AMERICAN PAPER PLATE COALITION,**<br><br>**Defendant-Intervenor.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Court No. 25-00064** |

# OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final determination and antidumping duty order in the 2024 antidumping duty investigation of paper plates from the People's Republic of China.]

Dated: June 11, 2026

Eugene Degnan and Jenny (Shiyu) Liang, Taft, Stettinius & Hollister LLP, of Washington, D.C., argued for Plaintiff Fuzhou Hengli Paper Co., Ltd. With them on the brief were Brady W. Mills, Donald B. Cameron, Jr., Julie C. Mendoza, Rudi W. Planert, Mary S. Hodgins, Jordan L. Fleischer, Jr., Edward J. Thomas, III, and Nicholas C. Duffey, Jr.

Collin T. Mathias, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With him on the brief were Brett A. Shumate, Assistant Attorney General,

Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. Of counsel on the brief was Heather Holman, Attorney, Office of the Chief Counsel for Trade Enforcement Compliance, U.S. Department of Commerce, Washington, D.C.

Adam H. Gordon and Scott D. McBride, The Bristol Group PLLC, of Washington, D.C., argued for Defendant-Intervenor American Paper Plate Coalition. With them on the brief was Benjamin J. Bay.

Choe-Groves, Judge: This action concerns the United States Department of Commerce's ("Commerce") final determination and antidumping duty order on paper plates from the People's Republic of China ("China") published in Certain Paper Plates From the People's Republic of China ("Final Determination"), 90 Fed. Reg. 8,271 (Dep't of Commerce Jan. 28, 2025) (final affirmative determination of sales at less than fair value and final affirmative determination of critical circumstances, in part) and accompanying Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Paper Plates from the People's Republic of China and Final Affirmative Determination of Critical Circumstances, in Part (Jan. 21, 2025) ("Final IDM"), PR 354.[1] Plaintiff Fuzhou Hengli Paper Co., Ltd. ("Plaintiff" or "Fuzhou") moves for judgment upon the agency record, challenging the final determination as neither supported by substantial evidence nor in

[1] Citations to the administrative record reflect the public record ("PR") numbers filed in this case, ECF No. 58.

accordance with law. Pl. Fuzhou Hengli Paper Co., Ltd. Mot. J. Agency R. ("Pl.'s Br."), ECF Nos. 39, 40. In the final determination, Commerce calculated a 515.40% dumping margin based on total adverse facts available for Fuzhou. Final Determination, 90 Fed. Reg. at 8,272. Defendant United States ("Defendant" or "Government") and Defendant-Intervenor American Paper Plate Coalition ("Defendant-Intervenor") contend that the use of total adverse facts available was warranted. Def.'s Resp. Pl.'s R. 56.2 Mot. J. Agency R. ("Def.'s Resp. Br."), ECF No. 44; Def.-Interv.'s Resp. Br., ECF Nos. 42, 43. For the reasons discussed below, the Court remands Commerce's Final Determination.

## BACKGROUND

In February 2024, Commerce initiated an antidumping investigation of certain paper plates from China, Thailand, and Vietnam. Certain Paper Plates From the People's Republic of China, Thailand, and the Socialist Republic of Vietnam, 89 Fed. Reg. 14,046 (Dep't of Commerce Feb. 26, 2024) (initiation of less-than-fair-value investigations). Commerce selected Fuzhou and Jinhua P&P Product Co., Ltd. ("Jinhua") as mandatory respondents. Final IDM at 1. Commerce issued a request for information on April 24, 2024 that required Fuzhou to report factors of production, and Fuzhou responded on May 29, 2024 and June 18, 2024. Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Paper Plates from the People's Republic of China, Case No. A-570-164:

Fuzhou Hengli's Section A Initial Questionnaire Response" (May 29, 2024), PR 185; Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Sections C and D Initial Questionnaire Responses" (June 18, 2024) ("Sections C and D Initial Questionnaire Responses"), PR 210. Commerce issued a supplemental questionnaire on July 26, 2024, requesting that Fuzhou report all factor consumption rates on a per kilogram basis rather than on a per pack basis, and Fuzhou responded on August 9, 2024. Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Paper Plates from the People's Republic of China, Case No. A-570-164: Fuzhou Hengli's Supplemental Questionnaire Response" (Aug. 9, 2024) ("Supplemental Questionnaire Response"), PR 278. The Preliminary Determination was published on September 5, 2024, and Commerce determined initially that Fuzhou's weighted-average margin was below the threshold sufficient to impute knowledge of dumping. Final IDM at 2, 4. From November 12–24, 2024, Commerce conducted a verification of the questionnaire responses of Fuzhou and Jinhua. Id. at 2.

Commerce issued the Final IDM on January 21, 2025, and published the Final Determination on January 28, 2025, applying total adverse facts available. See generally Final IDM; Final Determination. Commerce determined that the use of facts otherwise available was warranted because Fuzhou withheld information,

failed to report information in the form or manner requested, and impeded the investigation regarding Fuzhou's failure to report control number ("CONNUM")-specific factors of production. Final IDM at 7–8. Commerce determined that an adverse inference was warranted in selecting from the facts otherwise available because Fuzhou failed to cooperate to the best of its ability. Id. at 8. Commerce made the adverse inference that Fuzhou dumped "massive imports" over a "relatively short period" of time and found that critical circumstances existed. Id. at 4–5. The countervailing duty subsidy rate attributable to Fuzhou's export subsidies was deducted from Fuzhou's dumping margin after determining that the estimated weighted-average dumping margin was above *de minimis*. Id. at 5. In applying adverse facts available, Commerce applied the highest calculated individual dumping margin rate to Fuzhou and Commerce declined to decide the issue of surrogate value because Commerce considered Fuzhou's arguments regarding which surrogate value to use for paper inputs moot given the application of total adverse facts available. Id. at 8–9, 18.

**JURISDICTION AND STANDARD OF REVIEW**

The Court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c). The Court will hold unlawful any determination found to be unsupported by

substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I. Commerce's Application of Total Adverse Facts Available

Section 776 of the Tariff Act, as amended, provides that if "necessary information is not available on the record" then the agency shall "use the facts otherwise available in reaching" its determination. 19 U.S.C. § 1667e(a)(1). 19 U.S.C. § 1677e(a)(2) permits Commerce to select from facts otherwise available if an interested party: (A) withholds information; (B) fails to provide such information by the deadlines for submission, or in the form and manner requested; (C) significantly impedes a proceeding; or (D) provides information that cannot be verified. 19 U.S.C. § 1677e(a)(2). Commerce's authority to use facts otherwise available under 19 U.S.C. § 1677e(a) is subject to 19 U.S.C. § 1677m(d), which states that:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d).

If Commerce determines that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information" from the agency, then Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." Id. § 1677e(b)(1)(A). The Court of Appeals for the Federal Circuit ("CAFC") has interpreted these two subsections to have different purposes. See Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States, 753 F.3d 1227, 1232 (Fed. Cir. 2014). Subsection (a) applies "whether or not any party has failed to cooperate fully with the agency in its inquiry." Id. (citing Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1346 (Fed. Cir. 2011)). Subsection (b) applies only when Commerce makes a separate determination that the respondent failed to cooperate "by not acting to the best of its ability." Id. (quoting Zhejiang DunAn Hetian Metal Co., 652 F.3d at 1346).

When determining whether a respondent has complied to the "best of its ability," Commerce "assess[es] whether [a] respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). This determination requires both an objective and subjective showing. Id. Commerce must determine objectively "that a reasonable and responsible [respondent] would have known that the requested information was required to be

kept and maintained under the applicable statutes, rules, and regulations." Id. (citing Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002)). Next, Commerce must demonstrate subjectively that the respondent's "failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Id. at 1382–83.

Adverse inferences are not warranted "merely from a failure to respond," but rather in instances when Commerce reasonably expected that "more forthcoming responses should have been made." Id. at 1383. "The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." Id. To use an adverse inference when selecting among the facts otherwise available under Section 1677e(b), Commerce must assess whether the party used its maximum efforts to secure the missing information. Id. at 1382.

### A. Necessary Information Not Available on the Record Pursuant to 19 U.S.C. § 1677e(a)(1)

Plaintiff argues that Commerce's application of adverse facts available was unjustified because no necessary information was missing from the record. Pl.'s Br. at 14. Plaintiff claims that Commerce's basis for finding that necessary information was not on the record was that Fuzhou withheld information, could

have timely reported CONNUM-specific factors of production, and impeded the investigation. Id. at 15. The quoted portion of the Final IDM that Plaintiff frames as Commerce's basis for finding that necessary information was not on the record is rather Commerce's basis for determining that the use of facts available was "warranted pursuant to sections 776(a)(2)(A), (B) and (C) of the Act." Final IDM at 8. The Final IDM did not state that the use of facts otherwise available was warranted under 19 U.S.C. § 1677e(a)(1) for Fuzhou[2] as suggested by Plaintiff. The Court concludes that Commerce did not rely on 19 U.S.C. § 1677e(a)(1) to determine that applying facts otherwise available was warranted because the Final IDM states that Commerce used facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(2). See id. at 12.

**B. Information Pursuant to 19 U.S.C. § 1677e(a)(2)**

Pursuant to 19 U.S.C. § 1677e(a)(2), Commerce may use facts otherwise available if an interested party: (A) withholds information; (B) fails to provide such information by the deadlines for submission, or in the form and manner requested; (C) significantly impedes a proceeding; or (D) provides such information but the information cannot be verified. 19 U.S.C. § 1677e(a)(2). In the Final IDM, Commerce determined that the use of facts otherwise available was

---

[2] Commerce referred to 19 U.S.C. § 1677e(a)(1) in determining that the use of facts otherwise available was warranted to determine the rate of the "China-wide entity" but not for Fuzhou. See Final IDM at 8.

warranted pursuant to 19 U.S.C. § 1677e(a)(2)(A), (B), and (C). Final IDM at 12. Commerce explained that Fuzhou claimed to report factors of production on a control number or CONNUM-specific basis in its initial questionnaire response. Id. at 7. Commerce asked Fuzhou to revise its factors of production reporting to be on a per-kilogram basis. Id. During verification, Commerce identified that Fuzhou reported that all CONNUMs had the same paperboard input usage rate, but the reporting was derived from multiple paperboard inputs with different basis weights. Id.

Commerce determined that Fuzhou withheld requested information because, by allocating multiple paperboard inputs with different basis weights to a CONNUM with one basis weight, the reported factors of production were not CONNUM-specific. Id. at 8. Commerce claimed that Fuzhou did not report data in the manner requested and failed to notify Commerce that Fuzhou used another reporting methodology in its initial questionnaire response. Id. The Final IDM explained that Fuzhou's production process and records allowed Fuzhou to match paperboard inputs with produced paper plates on a weight basis, but Fuzhou chose not to do so. Id. at 14. Given Fuzhou's ability to report CONNUM-specific factors of production, and its failure to do so timely, Commerce determined that Fuzhou significantly impeded the investigation. Id. at 13–14.

Plaintiff claims that the record does not show that Fuzhou withheld requested information, and asserts that Commerce's determination is contrary to law and not based on record evidence. Pl.'s Br. at 15–16. Defendant argues that Commerce reasonably exercised its discretion to determine that Fuzhou withheld information requested, failed to provide information in the form and manner requested, and significantly impeded the investigation. Def.'s Resp. Br. at 18. Defendant-Intervenor agrees that Commerce correctly determined that the use of facts otherwise available was reasonable pursuant to 19 U.S.C. § 1677e(a)(2)(A), (B), and (C). See Def.-Interv.'s Br. at 24.

In the Final IDM, Commerce discussed the discrepancies in Fuzhou's CONNUM-specific reporting of factors of production and cited Fuzhou's initial questionnaire responses, the supplemental questionnaire response, and the verification report to support this determination. Id. at 7–8; see Sections C and D Initial Questionnaire Responses; Supplemental Questionnaire Response; Memo. to The File from Jose Rivera and Lingjun Wang, Int'l Trade Compliance Analysts, AD/CVD Operations, Office VII, "Verification of the Questionnaire Responses of Hengli Paper Co., Ltd. (Hengli) and its producer Guangdong Ecosource Environmental Technology Co., Ltd. (Ecosource)" (Dec. 17, 2024) ("Verification Report"), PR 335.

The record documents show that Section D(I)(E) of Commerce's initial questionnaire provided instructions for reporting factors of production and stated:

> If you are not reporting factors of production (FOPs) using actual quantities consumed to produce the merchandise under investigation on a CONNUM-specific basis, please provide a detailed explanation of all efforts undertaken to report the actual quantity of each FOP consumed to produce the merchandise under investigation on a CONNUM-specific basis. Additionally, please provide a detailed explanation of how you derived your estimated FOP consumption for merchandise under investigation on a CONNUM-specific basis and explain why the methodology you selected is the best way to accurately demonstrate an accurate consumption amount. For the most significant material input, for electricity, and for labor, please reconcile with worksheets the estimated consumption of these FOPs for a specific CONNUM to your cost-of-production (COP) ledger or the equivalent production ledger.

Letter from Lana Nigro, Program Manager, AD/CVD Operations, Office VII, to Donald B. Cameron, Morris, Manning & Martin, LLP, "Less-Than-Fair-Value Investigation of Certain Paper Plates from China: Request for Information" (Dep't Commerce Apr. 24, 2024) ("Initial Questionnaire") at D-2, PR 146. Section D(V) of the initial questionnaire provided the following instructions for submitting factors of production:

> Report all [factors of production], by-product or co-product offsets, and [market economy purchases] quantities on a consistent basis, i.e., for the same unit of the merchandise. For example, you might report [factors of production] or [market economy purchases] for one kilogram, or one piece, of the merchandise. This should be the unit in which factors are reported in your database; if this is not the same in which factors are recorded in your books and records, please explain. Indicate the unit used at the top of the spreadsheet.

Initial Questionnaire at D-4, D-5.

In response to Section D(I)(E), Fuzhou stated that this was "not applicable" because the producers of Fuzhou's merchandise, Guangdong Ecosource and Ningbo Hongtai, reported factors of production "using actual quantities consumed to produce the merchandise under investigation on a CONNUM specific basis." Sections C and D Initial Questionnaire Responses at D-4. In response to Section D(V), Fuzhou stated that its producers reported the factors of production on a consistent basis, "kilograms," for all material factors. Id. at D-9. Fuzhou explained that "[f]or the final product that calculates the unit consumption of production factors, Guangdong Ecosource and Ningbo Hongtai use 'packages' as the unit of measurement for the final subject merchandise." Id. Fuzhou filed a company certification attesting to the accuracy of the initial questionnaire responses. Id.

Commerce issued a supplemental questionnaire acknowledging that Fuzhou initially reported factors of production on a per pack basis, but requested that Fuzhou report all factor consumption usage rates on a per-kilogram basis and revise the factors of production databases accordingly. Fuzhou Hengli Paper Co., Ltd, c/o Eugene Degnan, Morris Manning & Martin, LLP, "Less-Than-Fair-Value Investigation of Certain Paper Plates from the People's Republic of China: Supplemental Questionnaire for Fuzhou Hengli Paper Co., Ltd." (Dep't Commerce Jul. 26, 2024) ("Supplemental Questionnaire") at 6, PR 265. Fuzhou responded by

reporting all factor consumption usage rates on a per kilogram basis. Supplemental Questionnaire Response at 7, Ex. SQR-12.1, Ex. SQR 12.2.

Commerce visited Fuzhou and its producer Guangdong Ecosource to verify Fuzhou's questionnaire responses in November 2024. Verification Report at 1. In the verification report, Commerce noted that Guangdong Ecosource's methodology used total production quantity in kilograms as the denominator, and total consumption quantity in kilograms of each material as numerators. Id. at 16. Commerce reported that there are many types of paper input by combination of different widths and basis weights, and each has a unique material code. Id. Each of the types of paper input are allocated to each of the types of finished paper plates. Id. This reportedly resulted in paper inputs with a range of basis weights being allocated inaccurately as paper plates all with the same basis weight. Id. Commerce claimed that this allocation was inconsistent with the production process that "a paper plate with basis weight of 270g/m$^2$ is made only from paper input with basis weight of 270g/m$^2$." Id.

Commerce stated that after Fuzhou revised the consumption reporting on a per-kilogram basis, Fuzhou's reported consumption of paperboard was identical for every product produced by Guangdong Ecosource in its supplemental questionnaire response and that these reported consumption rates did not reflect product-specific consumption rates, but rather reflected consumption as a whole

based on the total quantity of products. Final IDM at 13. Commerce asserted that Fuzhou provided the same paperboard input consumption rate for all CONNUMs, which was incorrect because the same basis weight was not used for all products. Id. Regarding the statement that Fuzhou made in the initial questionnaire response that Fuzhou "tracks the monthly consumptions of inputs and outputs on a product-specific basis," id., Commerce determined that Fuzhou had the ability to match paperboard inputs to paper plates by basis weight to report a CONNUM-specific consumption rate but declined to do so, and thus impeded the investigation by failing to timely report CONNUM-specific factors of production. Id. at 13–14.

**i. Fuzhou's Initial Factors of Production Reporting**

"Product-specific information is a fundamental element in the dumping analysis, and it is standard procedure for Commerce to request product-specific data in antidumping investigations." Mukand Ltd. v. United States ("Mukand"), 767 F.3d 1300, 1307 (Fed. Cir. 2014). Plaintiff claims that it complied with the initial questionnaire when it reported paperboard, varnish, ink, flexo stabilizer, and various packing materials as the specific factors used to produce the merchandise. Pl.'s Br. at 17. Fuzhou reported these specific factors of production in packages because that was the unit of measurement used by Guangdong Ecosource and Ningbo Hongtai for the final subject merchandise. Sections C and D Initial Questionnaire Responses at D-9. Defendant argues that the initial questionnaire

requested reporting input consumption on a per unit basis, which meant that Fuzhou had to submit how many kilograms of input went into producing a certain number of kilograms of the finished product or CONNUM. Def.'s Resp. Br. at 12. Defendant-Intervenor states that Fuzhou's reporting was not CONNUM-specific because when reporting the specific factors (paper/paperboard input, varnish, ink, flexion stabilizer, and packing materials), Fuzhou took the total amount of each input in kilograms and divided it by total output of all products in kilograms. Def.-Interv.'s Resp. Br. at 21. Defendant and Defendant-Intervenor describe this as "comingling" the paper board inputs with differing basis weights when Fuzhou reported the rates of material consumption for each wrapped package of paper plates, and both argue that this was not reporting on a CONNUM-basis as Commerce requested. Def.'s Resp. Br. at 13; Def.-Interv.'s Resp. Br. at 23.

Commerce's initial questionnaire requested that Fuzhou report factors of production on a CONNUM-specific basis in Section D(I)(E) and a consistent basis of the same unit of merchandise in Section D(V). Initial Questionnaire at D2, D-5. Fuzhou used packages as the unit of merchandise in reporting the material allocation of products from Guangdong Ecosource. See Sections C and D Initial Questionnaire Responses, Ex. D-6. For example, Exhibit D-6 reported the kilograms of "[w]hite card paper" and "[f]lexo gloss varnish" materials used per package for twelve different CONNUMs. Id. Although, in accordance with the

initial questionnaire, Fuzhou reported on a consistent unit of measurement by using packages as the unit of measurement, Fuzhou's CONNUM reporting did not reflect that the packages contained different products made from materials of different dimensions. Thus, the CONNUMs reported did not encompass one specific product but a blend, and the Court agrees with the argument of Defendant and Defendant-Intervenor that this showed "comingling" of the inputs.

For example, the consumption rate of white card paper materials reported was on a kilograms per pack basis for each CONNUM, which did not account for the fact that Fuzhou reported many different white card paper materials of different dimensions. Sections C and D Initial Questionnaire Responses, Ex. D-6. For white card paper and varnish, Fuzhou explained that it calculated the consumption quantity by dividing the quantity of raw material withdrawn from the warehouse by the total production quantity for all products multiplied by a finished product's production quantity. Sections C and D Initial Questionnaire Responses at D-13. Fuzhou's reporting was not truly CONNUM-specific because the finished products contained materials of various sizes and weights. Sections C and D Initial Questionnaire Responses, Ex. D-6 (documenting multiple white card paper materials with a range of dimensions). Defendant and Defendant-Intervenor argue that the reported factors of production were not CONNUM-specific as Commerce

requested, and the Court agrees. Def.'s Resp. Br. at 12–13; Def-Interv.'s Resp. Br. at 16.

Commerce's initial questionnaire indicated a preference for CONNUM-specific reporting for factors of production and explicitly requested that detailed explanations be provided if CONNUM-specific reporting was not being provided. Initial Questionnaire at D-2. Fuzhou's reporting was organized by CONNUM, but the information allocated to each CONNUM was not CONNUM-specific as Commerce requested. By not accounting for differences in the material factors used in each product, Fuzhhou reported material allocation by CONNUM that generalized the material consumption data and did not report the actual quantity of each factor of production consumed to produce the merchandise. See id.

Under 19 U.S.C. § 1677e(a)(2), Commerce may use facts otherwise available if a party withholds information that has been requested. Commerce determined that Fuzhou did not report CONNUM-specific factors of production by including paperboard inputs with different basis weights in the consumption calculations. Final IDM at 13. The Final IDM noted that Commerce verified Fuzhou's statement from the initial questionnaire response that it "tracks the monthly consumptions of inputs and outputs on a product-specific basis[.]" Final IDM at 13. From this statement, Commerce determined that Fuzhou could have reported CONNUM-specific factors of production as requested. Id. Thus,

Commerce determined that Fuzhou withheld information, failed to provide information in the form and manner requested, and impeded the investigation. See id. The Court agrees that Fuzhou failed to provide information in the form and manner requested by not providing CONNUM-specific factors of production reporting.

However, the initial questionnaire also instructed that all factors of production could be reported in the unit in which factors are reported in the respondent's database, which Fuzhou did by using packages. See Initial Questionnaire at D-5. This problem may have impeded the investigation because although Commerce requested CONNUM-specific reporting, Fuzhou's reporting was not truly CONNUM-specific given the variety of basis weights "comingled" and not accurately reflected in the reporting. The Court concludes that substantial evidence on the record supports Commerce's determination that Fuzhou failed to report CONNUM-specific information as requested by Commerce.

**C. Notice and Opportunity to Remedy or Explain Deficiencies**

Commerce's authority under 19 U.S.C. § 1677e(a) to use facts otherwise available is subject to a statutory obligation under 19 U.S.C. § 1677m(d) that requires Commerce to notify a respondent promptly of the nature of a deficiency in the record and to provide the respondent with an opportunity to remedy or explain the deficiency. 19 U.S.C. § 1677e(a); 19 U.S.C. § 1677m(d). If the party submits

a response that Commerce determines is unsatisfactory or the response is not filed by the deadline set by Commerce, then Commerce may disregard all or part of the original and subsequent responses. 19 U.S.C. § 1677m(d). Commerce can satisfy its obligations under 19 U.S.C. § 1677m(d) when it issues a supplemental questionnaire specifically pointing out and requesting clarification on deficient responses. NSK Ltd. v. United States, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007).

Plaintiff claims that it fully complied with Commerce's requests for information and that Commerce failed to provide Fuzhou with notice of any deficiencies as required by 19 U.S.C. § 1677m(d). Pl.'s Br. at 17, 24–26; Pl.'s Reply Br. Supp. Mot. J. Agency R. at 16, ECF No. 54. Commerce stated that it provided Fuzhou with an opportunity to remedy "the pre-wrapped package reporting and granted the requested extension in full." See Final IDM at 14.

Commerce's supplemental questionnaire stated that Fuzhou reported certain factors of production on a per pack basis and requested that Fuzhou "report all factor consumption usage rates on a per [kilogram] basis and revise the individual and combined [factors of production] databases accordingly." Supplemental Questionnaire at 6. Commerce also requested that Fuzhou "add the individual product matching characteristics in the [factors of production] database." Id.

Plaintiff argues that this question did not notify Fuzhou of any deficiency regarding the specificity of paperboard weight. Pl.'s Br. at 26. Defendant claims

that the supplemental questionnaire alerted Fuzhou to Commerce's concerns with the reporting and provided an opportunity to correct the issues. Def.'s Resp. Br. at 20. Defendant argues that what led to Commerce issuing the supplemental questionnaire was Fuzhou's initial deficient reporting, and that both questionnaires must be viewed in conjunction. Id. at 21. Defendant asserts that the supplemental questionnaire identified that Fuzhou's "product matching characteristics were deficient," and requested clarification of the deficient response. Id. at 21–22. Defendant claims that "Commerce did not discover the full extent of Fuzhou Hengli's deficient reporting until verification," and insists that discovery of additional information not previously reported until verification justifies the application of an adverse inference. Id. at 22. Defendant-Intervenor also insists that "[i]t was only later, at verification, that Commerce recognized the extent of Hengli's inaccurate reporting[,]" and cites Reiner Brach GmbH & Co.KG v. United States ("Reiner Brach"), 26 CIT 549, 206 F. Supp. 1323 (2002), appeal dismissed sub nom., 49 F. App'x 296 (Fed. Cir. 2002), to argue that "absent Commerce's knowledge that a deficiency existed, no obligation to alert a respondent as to a deficiency existed in the first place." Def.-Interv.'s Resp. Br. at 31–32.

Commerce must inform a respondent of the nature of the deficiency. 19 U.S.C. § 1677m(d); see Mukand, 767 F.3d at 1304. In Mukand, the CAFC held

that resorting to facts otherwise available was justified when a respondent repeatedly failed to provide size-specific cost data that Commerce requested. 767 F.3d at 1306. In that case, Commerce sought product-specific cost information when calculating the respondent's dumping margin for an administrative review of an antidumping order. Id. at 1302–03. The respondent's initial questionnaire response assigned the same production costs across all product sizes and did not explain its rationale for this approach, despite Commerce requesting such an explanation. Id. at 1303. Commerce informed the respondent "that it did not consider this approach to be reasonable and asked that Mukand produce size-specific cost information[.]" Id. Commerce reiterated the need for size-specific cost information in four supplemental questionnaires. Id. at 1303–06. In concluding that Commerce's decision to resort to facts otherwise available and apply an adverse inference was supported by substantial evidence, the Court noted that "[i]n each of the supplemental questionnaires, Commerce explained why it was unsatisfied with Mukand's response and reiterated both the type of information it needed and why it was important." Id. at 1306.

The Court disagrees with Defendant and Defendant-Intervenor that the supplemental questionnaire sufficiently provided Fuzhou with notice of a deficiency. The supplemental questionnaire requested that Fuzhou report all consumption rates on a per kilogram basis, but Commerce did not explicitly notify

Fuzhou of the deficiency—that the factors of production reporting was not truly CONNUM-specific because it did not account for the different materials of different basis weights. See Supplemental Questionnaire at 6. Failing to identify the deficiency and instruct Fuzhou on how to cure the deficiency in the supplemental questionnaire denied Fuzhou the opportunity to remedy or explain the deficiency. See Ta Chen Stainless Steel Pipe v. United States, 23 CIT 804, *17 (1999); Baroque Timber Indus. (Zhongshan) Co. v. United States, 49 CIT __, __, 776 F. Supp. 3d 1290, 1309–10 (2025) (concluding that Commerce's application of adverse facts available was not in accordance with law when Commerce failed to satisfy its obligation under 19 U.S.C. § 1677m(d) because Commerce did not specifically point out and request clarification of a deficiency).

Defendant argues that Fuzhou's "deficient reporting led to Commerce's supplemental questionnaire," and that the supplemental questionnaire "point[ed] out" the deficiency with product matching characteristics and requested clarifications of this "deficient response." Def.'s Resp. Br. at 21–22. Questions 12 and 13 in Section D of the supplemental questionnaire state the following:

> Section D
>
> 12. Fuzhou Hengli reported certain factors of production on a per pack basis (see Exhibits D-6 and D-7). Please report all factor consumption usage rates on a per KG basis and revise the individual and combined FOP databases accordingly.

13. Please add the individual product matching characteristics in the FOB database.

Supplemental Questionnaire at 6. In Mukand, Commerce informed the respondent that it did not consider the respondent's questionnaire response to be reasonable in the supplemental questionnaire and why, but Commerce did not state anything equivalent to that with respect to Fuzhou in this case. 767 F.3d at 1303. The supplemental questionnaire failed to inform Fuzhou that there was any deficiency, much less the nature of the deficiency. See Hyundai Steel Co. v. United States, 45 CIT __, __, 518 F. Supp. 3d 1309, 1326 (2021) ("Commerce's broadly drawn Supplemental Questionnaire did not satisfy the notice requirement in § 1677m(d) because it failed to identify the nature of the alleged 'deficiency' in Hyundai's response with any specificity.").

Defendant-Intervenor cites Reiner Brach as an analogous case of when the full extent of a deficiency was not discovered until verification, but Reiner Brach is distinguishable from the facts of this case. In Reiner Brach, the Court found that Commerce complied with the requirements of § 1677m(d) because the initial questionnaire issued was clear as to the information requested, Commerce raised discrepancies in a supplemental questionnaire and gave the respondent an opportunity to respond, and the respondent provided such a vague response that "Commerce did not have notice or reason to believe a deficiency existed" until it

was discovered at verification.[3] Reiner Brach, 26 CIT at 557, 206 F. Supp. at 1332. In Reiner Brach, the supplemental questionnaire issued by Commerce expressly stated that it discovered discrepancies in the respondent's initial questionnaire response. Id. ("In its May 25, 2000 supplemental questionnaire, Commerce stated, 'According to your Section A response, total quantity for Home Market sales sold is [* * *] kilograms and the total value is $ [* * *]. However, your sales data indicates that total quantity for Home Market sales is [* * *] MT or ([* * *] kg) and total sales value is $ [* * *]. Please explain these discrepancies.'").

In contrast, Commerce did not inform Fuzhou that it considered the original reporting to be deficient or unreasonable.[4] The initial questionnaire requested reporting of factors of production on a CONNUM-specific basis and all factors of production quantities on a consistent basis, specifically the unit in which factors were reported in Fuzhou's database. Initial Questionnaire at D-2, D-5. Commerce

---

[3] Defendant and Defendant-Intervenor's insistence on this being a case of discovering deficiencies at verification does not align with Defendant's claim that Fuzhou's "deficient reporting led to Commerce's supplemental questionnaire[.]" Def.'s Resp. Br. at 21.

[4] Defendant claims that the supplemental questionnaire served as a deficiency notice pursuant to 19 U.S.C. § 1677m(d) and that Commerce notified Fuzhou of its deficient response of reporting factors of production on a per-pack basis, rather than a per-unit basis. Def.'s Resp. Br. at 13. However, this disregards the initial questionnaire's instruction that factors of production could be reported in the unit which factors are reported in the respondent's database. Initial Questionnaire at D-5.

had knowledge of Fuzhou's reporting methods because Fuzhou included a step-by-step explanation of how it reported factors of production in the initial questionnaire response, weakening the claim that Commerce lacked notice of the type of factors of production reporting that Fuzhou provided. See Initial Questionnaire Response at D-12–D-15. The supplemental questionnaire only asked for factor consumption rates to be reported on a different basis, per kilogram, and to revise the factors of production databases accordingly. The Court concludes that Commerce failed to satisfy 19 U.S.C. § 1677m(d) because the supplemental questionnaire issued did not distinctly inform Fuzhou of a deficiency. See Meihua Grp. Int'l Trading (Hong Kong) Ltd. v. United States, 47 CIT __,__, 633 F. Supp. 3d 1203, 1212 (2023) (concluding that Commerce did not fulfill its statutory obligation under 19 U.S.C. § 1677m(d) when Commerce failed to provide notice of a deficiency).

The Court concludes that Commerce failed to satisfy its statutory obligation under 19 U.S.C. § 1677m(d) to provide notice of a deficiency and an opportunity to correct the deficiency. Accordingly, the Court holds that Commerce's application of facts otherwise available under U.S.C. 19 § 1677e(a) and an adverse inference under 19 U.S.C. § 1677e(b) are not in accordance with law. The Court concludes that Commerce's application of adverse facts available was not supported by substantial evidence or in accordance with law.

On remand, Commerce must provide Fuzhou with sufficient notice of the deficiencies in the factors of production reporting and must provide Fuzhou with the opportunity to cure the deficiencies. The Court remands Commerce's application of adverse facts available for further consideration in accordance with this Opinion.

## II. Surrogate Value

Commerce considered Fuzhou's arguments on surrogate value moot after Commerce applied total adverse facts available and declined to make a surrogate value determination for Fuzhou. Final IDM at 18. The Court may revisit this issue after remand as appropriate.

## III. Critical Circumstances

After applying total adverse facts available to Fuzhou, Commerce determined that critical circumstances existed. Final IDM at 4. The Court may revisit this issue after remand as appropriate.

## CONCLUSION

For the foregoing reasons, the Court concludes that Commerce's application of total adverse facts available was not supported by substantial evidence and not in accordance with law. Accordingly, it is hereby

**ORDERED** that Commerce's Final Determination is remanded for reconsideration consistent with this Opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

1. Commerce shall file its remand redetermination on or before August 7, 2026;
2. Commerce shall file the administrative record on or before August 21, 2026;
3. Comments in opposition to the remand redetermination shall be filed on or before September 4, 2026;
4. Comments in support of the remand redetermination shall be filed on or before September 18, 2026; and
5. The joint appendix shall be filed on or before September 25, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: June 11, 2026
New York, New York